BAUMGARTNER, Appellant, vs. CITY OF MILWAUKEE and
another, Respondents.

*February 7—April 2, 1919.*

*Injunction: Taxpayer's action: Diversion of public funds: Publica-
tion of proceedings of city council: Readvertising for bids.*

The expenditure, by direction of a city council, of a small sum in
readvertising for bids for the publication of the proceedings
of the council, is not such a substantial diversion of public
funds as to warrant the interference of a court of equity, by
way of injunction, at the suit of a taxpayer. *Mueller v. Eau
Claire Co.* 108 Wis. 304, distinguished.

APPEAL from an order of the circuit court for Milwau-
kee county: LAWRENCE W. HALSEY, Circuit Judge. *Af-
firmed.*

Demurrer.   The complaint alleges that the plaintiff is a
taxpayer in the city of *Milwaukee,* a municipal corporation,
city of the first class; that *Peter F. Leuch* is the city clerk;
sets out the provisions of sec. 1, ch. 50, Laws 1903, which
authorizes the common council of any city of the first
class to publish its proceedings, requires that advertisements
inviting bids shall be published, how and when the bids
shall be opened, requires the clerk to transmit the proposals
to the next regular meeting of the common council, and
further provides that the common council shall thereupon at
said meeting thereof, by its resolution, designate and award
such publication of proceedings to the bidder offering to
print such proceedings at the lowest price. "Provided, how-
ever, that said common council may in its discretion re-
ject any or all bids so made that by said common council
shall be deemed exorbitant, or too high."   That in response
to an invitation to submit bids the Broadway Press sub-
mitted a bid which was the lowest bid offered and was
transmitted to a meeting of the common council to be held
on the 16th day of April, 1918; that the common council
refused to award the contract for the publication of its pro-

ceedings to the said Broadway Press, and referred the matter to its committee on finance and printing; that said committee held a hearing on April 30th, at which hearing the Broadway Press appeared and offered proof as to its financial responsibility, competency, and reliability to do the work in question.    It is alleged that all the testimony offered upon the hearing tended to establish the competency and reliability of the Broadway Press; that thereupon three members of the committee, which consisted of five members, signed a report to the common council which was countersigned by the comptroller, which report recited that the committee objected to letting the bids to the Broadway Press, the lowest bidder, for the following reasons:

"1. It appears that the lowest bidder sometimes employs boys in the performance of his work.

"2. It appears that the lowest bidder has turned out some city and county printing in an unsatisfactory manner.

"3. It appears that the lowest bidder does not observe an eight-hour working day in accordance with the expression of the consensus of this body in the adoption of its eight-hour ordinance on city work.

"4. It appears that the lowest bidder does not uniformly pay the prevailing scale of wages, and this common council wishes to encourage the payment of the prevailing scale of wages."

The complaint further alleges that the report so submitted was adopted and a resolution introduced directing the city clerk to readvertise for bids, which resolution was referred to the committee on finance and printing, where it was pending at the time this action was begun.    The complaint then alleges that it was the duty of the common council to let the contract to the lowest bidder, unless the bids were exorbitant or the lowest bidder should prove to be incompetent or unreliable, and alleges that the bids were not exorbitant and that the Broadway Press was competent and reliable; that the report of the committee was made in bad faith, was not in accordance with the fact, and was

made for the purpose of preventing the Broadway Press from getting the contract because those who made the report were advocating union labor in the printing trade; that the report was the result of a conspiracy on the part of the members of the committee signing it; that the charges made as to the matters set out in the report were false, and that the action of the three members of the committee and the comptroller was pursuant to a prearranged plan to prevent the Broadway Press from securing the contract. The complaint further alleges that if the resolution authorizing the readvertising for bids is adopted the city clerk will readvertise, and that if the city is allowed and permitted to carry out its intentions, moneys in the hands of the city will be diverted for illegally authorized advertising and illegally authorized printing and large sums of money will be misappropriated and the city will incur a large indebtedness; that plaintiff has no adequate remedy at law and will have no legal remedy, and asks that the city clerk be perpetually enjoined and restrained from entering into any contract or incurring any liability for the publication of any notice or advertisement for bids, and for further special and general relief.

The defendants demurred to the complaint; the demurrer was sustained, and from the order sustaining the demurrer plaintiff appeals.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

For the respondents there was a brief by *Clifton Williams,* city attorney, and *Walter J. Mattison* of Milwaukee, of counsel, and oral argument by *Mr. Mattison.*

ROSENBERRY, J. We are met at the threshold of this case by the objection that the plaintiff taxpayer has no right to maintain this action for the reason that the complaint does not show that the public treasury will suffer a sub-

stantial loss if the proposed action of the city and its clerk be not enjoined.

The allegation of the complaint is, "the city of *Milwaukee* will misappropriate a large sum of money and incur a large indebtedness, and this plaintiff and the taxpayers of said city will suffer great and irreparable injury therefrom." These allegations are very general in their nature and are controlled by the specific allegations in the complaint as to the nature and amount of the threatened diversion of public funds. It must be said that it fairly appears from the complaint that the financial loss to the city if there is a readvertisement for bids will be the cost of the advertisement. Whether the readvertisement will produce a lower or a higher bidder than the Broadway Press, no one can say. If a lower bidder should appear, there will not only be no loss to the city but there will be a saving. If the lowest bidder in response to the readvertisement bids a sum higher than that bid by the Broadway Press, there might be a loss.

It does not appear what the cost of readvertisement will be. We know that it cannot be very much and must be a comparatively small sum.

It is said that *Mueller v. Eau Claire Co.* 108 Wis. 304, 84 N. W. 430, is conclusive as to the right of the plaintiff to maintain this action. In that case it appeared that the county board disregarded the lowest bid and let the contract to the next lowest bidder, the difference in the bids being $3. The right of the taxpayer to maintain the action was questioned and his right affirmed by the court. Speaking of the plaintiff taxpayers there, the court said:

"The fact that their ultimate pecuniary loss may be almost infinitesimal is not controlling. Their right to sue is not based alone upon a direct loss to them in the ultimate winding up of the transaction attacked. It rests rather upon the fact that an illegal contract has been entered into which will require a large amount of the taxpayers' money to satisfy. In other words, a debt has been created without

warrant of law, and the money of the taxpayer is about to be used for its liquidation. . . . In contemplation of a court of equity, the loss to the county would be the entire amount of the contract price to be paid on the illegal contract, and not the difference between the valid and void contracts."

In this case the court is not asked to enjoin the expenditure of public funds under an illegal contract. The plaintiff does not seek to compel the city to enter into a contract with the Broadway Press, but to prevent the expenditure of public funds for a readvertisement. In a proper case the city unquestionably has the right to readvertise. The sole injury threatened here is the expenditure of public funds for readvertisement.

The injury threatened in this case is not the expenditure of a large amount of public funds on an illegal contract, but to prevent the disbursement of a small amount for advertising. Not every irregular expenditure of public funds will be enjoined at the suit of a taxpayer. Where a taxpayer sought to enjoin the issuance of a county order upon an audited account for services rendered to a poor person for which a town in the county was primarily liable, although the county would be liable over to the town, this court said:

"A taxpayer can successfully invoke the power of a court of equity to enforce a right of a public corporation when there is danger that such corporation will otherwise suffer some substantial injury which to some extent will affect the taxpayer. The power of taxpayers, in such an emergency, to set judicial machinery in motion, is a very valuable right, but it must be kept within those reasonable limits which govern the administration of justice in courts of equity. The wrong existing or threatened must be one that will or may, if not properly met, cause some substantial loss to the corporation, else there is no warrant for calling the equity power of the court into activity." *Ebert v. Langlade Co.* 107 Wis. 569, 573, 83 N. W. 942; *Pung v. Derse,* 165 Wis. 342, 162 N. W. 177.

The expenditure of a small sum of money for readvertisement is not such a substantial diversion of public funds as would warrant the interference of a court of equity. The council may determine to let the contract to the Broadway Press; it may perhaps decline to publish the proceedings at all. In any event we cannot look into the future and anticipate and regulate future proceedings of the common council.

*By the Court.*—Order affirmed.