GOODLAND, Acting Governor, Respondent, vs. ZIMMERMAN, Secretary of State, Appellant.

*June 10—June 17, 1943.*

462

For the appellant there were briefs by the *Attorney General* and *James Ward Rector,* deputy attorney general, and oral argument by *Mr. Rector.*

For the respondent there was a brief by *Holmes & Shuttleworth* of Madison, and *Daniel H. Grady* of Portage, and oral argument by *Mr. Grady* and *Mr. Fred L. Holmes.*

ROSENBERRY, C. J.   The act in question created sec. 256.31 of the statutes to read:

"256.31   *State bar of Wisconsin.* (1) There shall be an association to be known as the 'State Bar of Wisconsin' com-

posed of persons licensed to practice law in this state, and membership in such association shall be a condition precedent to the right to practice law in Wisconsin.

"(2) The supreme court by appropriate orders shall provide for the organization and government of the association and shall define the rights, obligations and conditions of membership therein, to the end that such association shall promote the public interest by maintaining high standards of conduct in the legal profession and by aiding in the efficient administration of justice."

The bill was passed by the senate on February 19th, and on the same day was messaged to the assembly where it was concurred in on the 24th day of March, 1943, upon which day it was returned to the senate. It was enrolled on March 31, 1943, and subsequently delivered to the acting governor. On April 20, 1943, the acting governor returned the act to the senate vetoed, stating his reasons therefor, and on the same day the senate passed it over the acting governor's veto, and it was then messaged to the assembly where it was concurred in notwithstanding objections of the acting governor (Yeas 51; Nays 25; Paired 16), on the 5th day of May, 1943, and transmitted duly authenticated, accompanied by a history of the bill in the legislature, to the defendant, secretary of state.

It is necessary in entering upon the consideration of the question for decision to have before us the constitutional and statutory provisions concerning the passage of a bill over the governor's veto and the duty of the secretary of state to publish a law.

Sec. 10, art. V, of the constitution provides:

"Every bill which shall have passed the legislature shall, before it becomes a law, be presented to the governor; if he approve he shall sign it, but if not, he shall return it, with his objections, to that house in which it shall have originated, who shall enter the objections at large upon the journal and pro-

ceed to reconsider it. . . . If, after such reconsideration, two thirds of the members present shall agree to pass the bill . . . it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two thirds of the members present it shall become a law. But in all such cases the votes of both houses shall be determined by yeas and nays, and the names of the members voting for or against the bill . . . shall be entered on the journal of each house respectively. . . . "

Sec. 21, art. VII, Const., provides:

"The legislature shall provide by law for the speedy publication of all statute laws, and of such judicial decisions, made within the state, as may be deemed expedient. And no general law shall be in force until published."

Sec. 14.29 (10), Stats., provides:

"*Secretary of state, duties.* The secretary of state shall:
. . .

"(10) *Publish proposed constitutional amendments and laws.* To publish the laws as provided by section 35.64. . . ."

Sec. 35.64, Stats., provides:

"*Publication of all laws.* Every law shall be published in the official state paper immediately after its passage and approval, in type not smaller than six point; and until so published shall not take effect."

The statutory duty of the secretary of state is plain but the plaintiff in his amended complaint alleges that the law should not be published by the secretary of state for the following reasons: (1) That the bill was not constitutionally enacted because not passed over the governor's veto in the assembly by a vote of two thirds of all members present; (2) that sixteen members were paired and were not counted in determin-

ing whether two thirds of the members present voted; (3) that the bill is invalid because it unconstitutionally delegates power vested in the legislature to the supreme court.

It is clear from the provisions of the constitution already referred to that the legislative process is not complete unless and until an enactment has been published as required by the constitution and by statute. Until it is so published it has no effect whatever as a law. It is generally so considered. Witte, Wisconsin Blue Book, 1937, pp. 129, 151, where it is said:

"In Wisconsin, a bill is not law when approved by the governor or passed over his veto. It becomes a law only after it has been published in the official state paper." See *State ex rel. Martin v. Zimmerman* (1939), 233 Wis. 16, 288 N. W. 454.

We are here dealing with a bill which has not yet become a law. There is no such thing known to the law as an unconstitutional bill. A court cannot deal with the question of constitutionality until a law has been duly enacted and some person has been deprived of his constitutional rights by its operation. In a proper case a court may declare whether the legislature has exceeded its constitutional powers in the enactment of the law complained of. It is a rule of universal application that no one but a person injured can question the constitutionality of a law. *Appeal of Van Dyke* (1935), 217 Wis. 528, 259 N. W. 700; *Boyd v. State* (1935), 217 Wis. 149, 258 N. W. 330. For these reasons the question of constitutionality sought to be raised by the pleadings is not presented in this case.

To answer the question set down for argument, it is necessary for us briefly to consider some of the fundamental principles of our constitutional government. It must always be remembered that one of the fundamental principles of the American constitutional system is that governmental powers are divided among the three departments of government, the

legislative, the executive, and judicial, and that each of these departments is separate and independent from the others except as otherwise provided by the constitution. The application of these principles operates in a general way to confine legislative powers to the legislature, executive powers to the executive department, and those which are judicial in character to the judiciary. Some of the earlier constitutions, notably those of Massachusetts and Virginia, contained a provision to the effect that each department should exercise the powers granted to it and no other. While our constitution creates three separate, co-ordinate departments, it does not contain an express prohibition against one department exercising the powers of another but it is construed in practice as if it did. *In re Appointment of Revisor* (1910), 141 Wis. 592, 124 N. W. 670. We dealt with this matter in *In re Cannon* (1932), 206 Wis. 374, 240 N. W. 441, where an act of the legislature which sought to exercise a power committed by the constitution to the judicial department was held to be invalid. While the legislature in the exercise of its constitutional powers is supreme in its particular field, it may not exercise the power committed by the constitution to one of the other departments.

What is true of the legislative department is true of the judicial department. The judicial department has no jurisdiction or right to interfere with the legislative process. That is something committed by the constitution entirely to the legislature itself. It makes its own rules, prescribes its own procedure, subject only to the provisions of the constitution and it is its province to determine what shall be enacted into law. The precise question sought to be raised in this case has never been decided by this court. In this case it is sought by injunction to prevent an act of the legislature from becoming a law. While the secretary of state is not a member of the legislature, he is charged by the legislature with the duty of publishing its acts. The constitution and the statute enacted

pursuant to it provide that no general law shall be in effect until published. If a court can intervene and prohibit the publication of an act, the court determines what shall be law and not the legislature. If the court does that, it does not in terms legislate but it invades the constitutional power of the legislature to declare what shall become law. This it may not do. In *In re Cannon, supra,* the court said (p. 382) :

"Under our constitution the judicial and legislative departments are distinct, independent, and co-ordinate branches of the government. Neither branch enjoys all the powers of sovereignty, but each is supreme in that branch of sovereignty which properly belongs to its department. Neither department should so act as to embarrass the other in the discharge of its respective functions. That was the scheme and thought of the people in setting up the form of government under which we exist."

We analyzed the procedure by which a bill becomes a law in *State ex rel. Martin v. Zimmerman* (1939), 233 Wis. 16, 288 N. W. 454. We there held that it was the clear statutory duty of the secretary of state to publish a bill which reached him in the form of law, duly authenticated as such; that there was no duty imposed upon him to examine the procedure by which it was adopted or whether it was a valid enactment under the constitution, but when an act was presented in that form, it was his duty to publish it.

We are now asked to hold that it is his duty not to publish the act if it turns out upon examination that it was not constitutionally adopted or is unconstitutional in substance.

Because under our system of constitutional government, no one of the co-ordinate departments can interfere with the discharge of the constitutional duties of one of the other departments, no court has jurisdiction to enjoin the legislative process at any point. See the following cases in footnote.[1]

---

[1] *State ex rel. Department of Agriculture v. McCarthy* (1941), 238 Wis. 258, 299 N. W. 58; *Appleton v. Outagamie County* (1928), 197

When the legislative process has been completed, a court may then in a proper case consider whether the power of the legislature has been constitutionally exercised or whether the law enacted in the exercise of its power is valid. This is fundamental law. So far as we are advised, or able to ascertain, no court has heretofore attempted to interfere with the right of the legislature to enact and put in force a law.

We are cited to a large number of cases which are said to hold to the contrary. We have examined these cases and we find no case that bears upon the point here under consideration. We cannot analyze all of these cases but we shall deal with those upon which the most reliance is placed and which are typical of the remainder.

In a case much relied upon, that of *Crawford v. Gilchrist* (1912), 64 Fla. 41, 49, 59 So. 963, the governor suing as such and also as a citizen, taxpayer, and elector brought an action to enjoin the secretary of state from publishing at public expense and certifying to election officers certain proposed amendments to the constitution on the ground that such proposed amendments were invalid because they were not duly "agreed to by three fifths of all the members elected by each house" of the legislature. This case is not in point because the act by which the amendments were to be submitted had been passed by the legislature and published and there was no attempt to interfere with the exercise of legislative power. The case holds that an officer, in that case the secretary of state, might be enjoined from carrying out an act of the

Wis. 4, 220 N. W. 393; *Eisentraut v. Cornelius* (1911), 147 Wis. 282, 133 N. W. 34; *Christianson v. The Pioneer Furniture Co.* (1898) 101 Wis. 343, 77 N. W. 174, 77 N. W. 917; *Fleming v. Guthrie* (1889), 32 W. Va. 1, 9 S. E. 23; *People ex rel. O'Reilly v. Mills* (1902), 30 Colo. 262, 70 Pac. 322; *Smith v. Myers* (1887), 109 Ind. 1, 9 N. E. 692; *State v. Kozer* (1928), 126 Or. 641, 270 Pac. 513; *Walton v. Develing* (1871), 61 Ill. 201; *Fairchild v. City of Holton* (1917), 101 Kan. 330, 166 Pac. 503; *Staples v. State* (Tex. Civ. App. 1922), 244 S. W. 1068; *Yoder v. Givens* (1942), 179 Va. 229, 18 S. E. (2d) 380; *Kelley v. Kavanaugh* (D. C. W. D. N. Y. 1933), 3 Fed. Supp. 666; *Mendenhall v. Denham* (1895), 35 Fla. 250; 32 C. J. 240.

legislature in the enactment of which the provisions of the constitution were disregarded.

The case of *State ex rel. Linde v. Hall* (1916), 35 N. D. 34, 159 N. W. 281, was a suit to enjoin the secretary of state from submitting certain proposed constitutional amendments to the people. The action was begun in the supreme court and the court enjoined the secretary of state from proceeding on the ground that no law had been enacted by the legislature authorizing an amendment to the constitution by initiative proceedings, and for that reason the petition upon which the proceedings were founded was void. In that case the legislature had not even acted.

*State ex rel. Finnegan v. Dammann* (1936), 220 Wis. 143, 264 N. W. 622, is relied upon. In this case the attorney general sought by *mandamus* to compel the secretary of state to publish an act of the legislature which had been partially vetoed. The secretary of state had published the act omitting the vetoed parts. On behalf of the relator it was contended that the act should be published in toto because the partial veto was void and of no effect. Upon the hearing this court held that the law never having been approved by the governor as enacted by the legislature, the legislature having adjourned one day after the submission of the bill to the governor, the bill never had in fact become a law. This case does not bear upon the question before us. The law had been published, the relator claimed incorrectly. He sought its republication in what he deemed to be the correct form. In addition to the fact that there was no attempt to interfere with the legislative process, from a constitutional standpoint there is a vast difference between compelling publication of an act of the legislature so it may become law and enjoining publication of an act so that it cannot become law.

Many cases are cited to the proposition that the court has power to declare invalid an act of the legislature which contravenes constitutional provisions. That principle was estab-

lished in 1803 in *Marbury v. Madison*, 5 U. S. (1 Cranch) 137, 2 L. Ed. 60, and has been reaffirmed in hundreds of cases and is no longer open to debate.

While this court has not heretofore been called upon to consider this question in the precise form in which it is presented in this action, it has considered related questions. In *State ex rel. Rose v. Superior Court of Milwaukee County* (1900), 105 Wis. 651, 674, 81 N. W. 1046, the court was called upon to deal with an analogous situation. The case which was rather complicated in its facts turned upon the question of whether the superior court of Milwaukee county could enjoin the common council of the city of Milwaukee from an enactment of an ordinance which it was claimed would be invalid if enacted. The court said:

"The passage of the ordinance in question being legislative in its character, the question recurs whether the trial court, as a court of equity, had jurisdiction to restrain the common council from passing the same. The question is very important, and has received careful consideration. Our dual system of state and national governments is unique and intricate. We not only have numerous states embraced within the nation, but numerous municipalities in each state. The governmental power of each state, as well as the nation, is divided into three separate departments,—legislative, executive, and judicial,—which are in their action almost wholly independent of each other. The same three departments, in an inferior and subordinate way, exist in each municipality. In the exercise of such powers, the natural, if not the essential, order is for the legislative department, engaged in the enactment of laws, by-laws, and ordinances, to act first; for the executive department, engaged in executing and enforcing the laws, to act next; and for the judicial department, engaged in construing and declaring the laws, to act last—and hence the conservative agency of the government, whether national, state, or municipal. From the very nature of things, the judicial power cannot legislate nor supervise the making of laws. It is equally true that the legislative power cannot act judicially."

*Durrett Hardware & F. Co. v. City of Monroe* (1942), 199 La. 329, 5 So. (2d) 911, 140 A. L. R. 433, dealt exhaustively with the power of the court to enjoin legislative action. To this case there is appended a note. The general rule is stated in the note as follows:

"A court of equity will not enjoin a municipal legislative body from exercising legislative powers, even though its action may be unconstitutional or *ultra vires,* and persons aggrieved by such action are remitted to the remedies available after the legislative function has been exercised such remedies ordinarily being adequate to prevent substantial injury."

In addition to the federal cases, cases from Alabama, California, Colorado, Connecticut, Georgia, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maryland, Minnesota, Missouri, Nebraska, New Jersey, New York, Oklahoma, Oregon, South Dakota, Texas, Vermont, Washington, West Virginia, and Wisconsin are cited as sustaining this rule. If this rule so well established applies to the exercise of a delegated legislative authority by a municipality, it applies much more strongly to the legislature of a state which exercises the sovereign power of the people under the constitution. Not only is the great weight of authority in this country to the effect that a court has no power to enjoin the proceedings of a legislature or to invade the province of the legislature but we find no authority to the contrary.

It follows, (1) that the injunction issued *pendente lite* was improvidently issued; (2) that the court was without jurisdiction to entertain the action for the reason that it had no power in the premises; and (3) that the court erred in denying defendant's motion for summary judgment dismissing the action.

So that there may be no misunderstanding in the future we feel it necessary to deal with certain questions urged upon our attention by the attorney general. It is argued that the

plaintiff has no interest sufficient to entitle him to maintain this action.  The plaintiff sues in four capacities:

(1) The plaintiff as acting governor occupies the chief executive office of the state.  He has no more right or authority to intervene in the legislative process in that capacity than has a court.  As acting governor the plaintiff is head of the executive department but that gives him no supervisory power over the other co-ordinate departments.  The constitution commits to him the veto power which he has exercised in connection with the legislation under consideration.  (2) The plaintiff alleges that he is an elector.  This cannot qualify him to maintain this action as he cannot in any possible way sustain an injury in his capacity as an elector.  (3) He sues as an attorney at law.  As an attorney at law he has sustained no injury.  The bill has not yet become a law.  Even if published the act will not affect any attorney at law unless and until the court has made an order pursuant to its provisions. (4) The plaintiff also sues as a taxpayer.  The expense of publishing the law it is said will amount to $1.49.  If the law is published and becomes a part of the statutes, it would occupy not to exceed a quarter of a page in the statutes of Wisconsin, which will contain upwards of three thousand pages and sells for $5.  The additional expense of publication is almost infinitesimal.

*Ebert v. Langlade County* (1900), 107 Wis. 569, 573, 83 N. W. 942, was a taxpayer's action in which the plaintiff sought to enjoin the defendant county from issuing a county order on an audited bill for medical services rendered a poor person on the ground that the claimant was not entitled to recover his claim of the county.  The county board had allowed the bill which was the primary obligation of another county which would have ultimately reached the defendant county in due course.  The trial court refused to enjoin the payment. The plaintiff appealed.  After holding that the claim had not

been properly allowed by the county board of Langlade county, inasmuch as it should have been first presented and allowed by Vilas county, the court said:

"Notwithstanding what has been said, it does not necessarily follow that plaintiff could successfully appeal to a court of equity to enforce the legal right of the county, and performance of the duty of its proper officers, to reject the physician's claim. A taxpayer can successfully invoke the power of a court of equity to enforce a right of a public corporation when there is danger that such corporation will otherwise suffer some substantial injury which to some extent will affect the taxpayer. The power of taxpayers, in such an emergency, to set judicial machinery in motion, is a very valuable right, but it must be kept within those reasonable limits which govern the administration of justice in courts of equity. *The wrong existing or threatened must be one that will or may, if not properly met, cause some substantial loss to the corporation, else there is no warrant for calling the equity power of the court into activity.*"

This case was affirmed in *Baumgartner v. Milwaukee* (1919), 168 Wis. 641, 171 N. W. 667. In this case there will be no substantial loss to the state, while the loss to the taxpayer will be so small as to be difficult of computation. The right of a taxpayer to bring an action on behalf of a public corporation cannot be made a peg upon which to hang an action brought for an entirely different purpose.

It is also urged that the action was improperly brought because it is sought to make the right of a circuit court to issue an injunction in aid of its equity jurisdiction to serve the purpose of a prerogative writ which under the constitution may issue only out of this court. We do not find it necessary to resolve this question at this time.

For reasons which will hereafter appear we have concluded, despite the lack of interest of the plaintiff, to consider and decide this case upon its merits. We would not treat this mat-

ter in the opinion at all if it were not for the fact if we do not it might be urged upon us as a precedent in future cases.

In the order of the court dated June 4, 1943, specifying the question to which consideration upon this appeal would be limited, there was contained the assurance that ample opportunity would be afforded to present to this court all questions relating to the validity of sec. 256.31, Stats., whether these questions relate to the matter of enactment or the subject matter of the act. Upon further consideration we deem it advisable to set forth the peculiarities of the situation which require that this court take the initiative in having these matters properly presented to it. Our determination that the temporary injunction against the secretary of state was improvidently issued and that summary judgment in his favor was erroneously denied exhausts the function and jurisdiction of this court upon the appeal of which this determination disposes.

Since, (1) our jurisdiction upon this appeal is wholly statutory all control over the appeal and over the record terminates in accordance with statutory prescriptions; (2) our determination can have no effect unless, (a) such a judgment as we consider should have been entered below is entered by this court, or (b) the record remanded with proper directions to the trial court. We therefore are not in a position to hold the record upon this appeal in this court as a record. On the other hand, every consideration of expedition, economy of effort and expense points to the desirability of a determination in the nature of an original proceeding in this court upon all questions not determined by this appeal.

In this connection attention should be called to the peculiar character of this legislation in that even upon publication it affects nobody but this court. It wholly exhausts itself with the direction to this court to put into effect an organization of the Bar without detailed specification as to the character of

the organization. Nobody can be affected by this law until this court acts, and since this court has no intention of acting until all questions concerning its validity are disposed of, there is not in advance of this determination any person who can be considered adversely affected by the legislation or apt to sustain either such present injury as would give him standing to attack its constitutionality or such a threat of injury as would give him an interest to pray for declaratory relief.

On the other hand, the court is not in a position properly to consider the merits of objections that may be made to the manner of enactment of this legislation without a background of fact and this background is adequately presented by the present record, except so far as it may be contended, (1) that this court may go beyond the journals in order to ascertain the facts, and (2) that such facts as are not disclosed by the journal are in controversy.

Under all these circumstances, it is considered proper for this court when the act is published to proceed as it did in *In re Appointment of Revisor of Statutes, supra,* and in *Rules of Court Case* (1931), 204 Wis. 501, 236 N. W. 717, and upon its own motion to determine the validity of sec. 256.31, Stats. To this end, it proposes, (1) to retain a certified copy of the record in this case; (2) to frame upon its own initiative and with this record as a basis, such issues concerning the validity of the enactment and subject matter of the law as are deemed to be important; (3) to invite such co-operation upon the part of those who oppose and those who defend the validity of this legislation as will insure adequate presentation of the matter to this court; and (4) in case of need, order a reference of any issues of fact considered to be material in determining this matter. Orders and procedures to implement this course of action will be devised at the proper time.

*By the Court.*—The injunction enjoining the secretary of state from publishing the act in question is hereby vacated and set aside for want of jurisdiction. On the plaintiff's motion to review, the order is affirmed. On the defendant's appeal, the order appealed from is reversed, and the cause remanded with directions to the trial court to grant the defendant's motion for summary judgment and to dismiss the action.