REBECCA GRASSL BRADLEY, J.
*213 *518 ¶1 We accepted the League of Women Voters of Wisconsin's[1] petition to bypass the court of appeals in order to *519 decide whether the Wisconsin Legislature's December 2018 extraordinary session comported with the Wisconsin Constitution. The League maintains that extraordinary sessions are unconstitutional; therefore, all legislation passed during the December 2018 session is void ab initio and the Senate's confirmation of 82 gubernatorial appointees during the session was invalid.[2] Governor Tony Evers agrees with the League. The Legislature argues that extraordinary sessions clearly conform with the Wisconsin Constitution and Wis. Stat. § 13.02 (2017-18), making the passage of the three Acts as well as the appointments entirely lawful.[3] The circuit court agreed with the League and the Governor, declared the Acts unconstitutional, and issued a temporary injunction enjoining the enforcement of all three Acts and vacating all 82 appointments.
¶2 We hold that extraordinary sessions do not violate the Wisconsin Constitution because the text of our constitution directs the Legislature to meet at times as "provided by law," and Wis. Stat. § 13.02(3) provides the law giving the Legislature the discretion to construct its work schedule, including preserving times for it to meet in an extraordinary session. The work schedule the Legislature formulated for its 2017-2018 biennial session established the beginning and end dates of the session period and specifically contemplated the convening of an extraordinary session, *520 which occurred within the biennial session. The circuit court invaded the province of the Legislature in declaring the extraordinary session unconstitutional, enjoining enforcement of the three Acts, and vacating the 82 appointments. We vacate the circuit court's order and remand the matter to the circuit court with directions to dismiss the League's complaint.[4] *214 I. BACKGROUND
¶3 The biennial session period for the 2017 Legislature began on Tuesday, January 3, 2017 and ended at noon on Monday, January 7, 2019. The Legislature adopted its work schedule in 2017 Senate Joint Resolution 1, which was "[r]esolved by the senate, the assembly concurring." (Hereinafter "JR1".)
¶4 JR1 contains two "Sections." "Section 1" has six subsections:
• Subsection (1) lists the dates of the 2017-2018 session-January 3, 2017 to January 7, 2019.
• Subsection (2) extends the statutorily prescribed budget deadline.
• Subsection (3) sets forth "Scheduled floorperiods and committee work periods."
• Subsection (4) sets the timeframe for the "Interim period of committee work."
*521 • Subsection (5) addresses "Special and Extraordinary Sessions."
• Subsection (6) specifies the date for the "End of Term" of the 2017 legislature.
¶5 Subsection (3) of Section 1 contains 24 paragraphs labeled (a) through (x). Paragraph (3)(a) addresses "Unreserved days" and provides:
Unless reserved under this subsection as a day to conduct an organizational meeting or to be part of a scheduled floorperiod of the legislature, every day of the biennial session period is designated as a day for committee activity and is available to extend a scheduled floorperiod, convene an extraordinary session, or take senate action on appointments as permitted by joint rule 81.
(Emphasis added.) Paragraphs (3)(b)-(x) set specific dates for "Inauguration," "Floorperiod[s]," "Bills to governor," "Nonbudget bills to governor," "Budget bill to governor," "Last general-business floorperiod," "Limited-business floorperiod," and "Veto review floorperiod."
¶6 Subsection (5) of Section 1, titled "Special and Extraordinary Sessions" comprises three paragraphs. Paragraph (5)(a) provides:
Adjournment. Except for consideration of executive vetoes or partial vetoes, a motion adopted in each house to adjourn a special or extraordinary session pursuant to this joint resolution shall constitute final adjournment of the special or extraordinary session.
Paragraph (5)(b) provides:
Bills to governor. No later than 4:30 p.m. on the first Thursday occurring 2 full weeks after the day a bill is *522 passed by both houses in identical form after May 9, 2018, in special or extraordinary session, the chief clerk of the house in which it originated shall submit it to the governor for executive action thereon.
Paragraph (5)(c) provides:
Veto review. A special or extraordinary session shall reconvene upon a call of a majority of the members of the joint committee on legislative organization solely for the consideration of executive vetoes or partial vetoes if an enrolled bill passed by both houses during the special or extraordinary session was vetoed or partially vetoed.
¶7 The last subsection of Section 1 sets the "end of term" and provides:
The biennial term of the 2017 legislature ends on Monday, January 7, 2019. Pursuant to section 13.02(1) of the statutes, the inauguration of the members of the 2019 legislature will be on Monday, January 7, 2019.
*215 ¶8 Finally, Section 2 of JR1 provides notice of the first meeting date for the 2019 session organization:
Notice is hereby given that the biennial session of the 2019 legislature will hold its first meeting, pursuant to section 13.02(1) of the statutes, on Monday, January 7, 2019, and that the meeting will begin at 2 p.m.
¶9 In December 2018, acting pursuant to JR1, Section 1, para. (3)(a), the Legislature convened an extraordinary session and passed three Acts that were subsequently signed into law by Governor Scott Walker: (1) 2017 Wisconsin Act 368, (2) 2017 Wisconsin Act 369, and (3) 2017 Wisconsin Act 370. During *523 the same extraordinary session, the Senate also confirmed 82 appointees nominated by Governor Walker.[5]
¶10 On January 10, 2019, the League filed a summons and complaint seeking a declaratory judgment and injunctive relief. The League asked the Dane County Circuit Court to declare the three Acts unconstitutional and unenforceable because, the League alleged, each was passed in a constitutionally invalid session. Similarly, the League contended in its Complaint that confirmation of the 82 nominees during the extraordinary session was unconstitutional and unenforceable. The Complaint sought an injunction "barring any State official from attempting to apply, implement, or enforce any actions taken by the Legislature at the December 2018 Extraordinary Session[.]" The case was assigned to Branch 15, the Hon. Stephen E. Ehlke presiding.
¶11 Five days later, the League filed an Amended Complaint and a motion for a temporary injunction. Both Complaints named as Defendants seven officers of the Wisconsin Elections Commission and Governor Tony Evers. Two weeks later, the Legislature filed a motion to intervene. On the same day, the League filed a request for substitution of Judge Ehlke, which was granted, and the case was reassigned to the Hon. Richard G. Niess. Judge Niess granted the Legislature's motion to intervene.[6] The Elections Commission defendants and the Legislature filed motions to dismiss. The Legislature also filed a motion requesting a stay of any injunction the circuit court might issue.
*524 ¶12 The circuit court held a hearing on all of the pending motions. Before the circuit court ruled on the Elections Commission Defendants' dismissal motion, the parties stipulated to their dismissal. In March 2019, the circuit court issued an order denying the Legislature's motion to dismiss, granting the temporary injunction, and denying the Legislature's motion to stay the injunction. The Legislature appealed to the court of appeals and after a substantial number of filings and procedural matters not relevant here, the League filed a petition with this court requesting to bypass the court of appeals and asking "for expedited Supreme Court review" because uncertainty will loom until this court provides the "final resolution."[7] We granted the League's bypass petition, adopted an accelerated briefing schedule, and heard oral argument on May 15, 2019.
*216 II. ANALYSIS
A. Standard of Review
¶13 The dispositive issue presented is whether the Legislature convened its December 2018 extraordinary session in accordance with the Wisconsin Constitution. The answer to that question requires interpretation of constitutional and statutory provisions, both of which involve questions of law we review de novo. See Milwaukee Journal Sentinel v. DOA, 2009 WI 79, ¶14, 319 Wis. 2d 439, 768 N.W.2d 700.
*525 B. Relevant Constitutional and Statutory Provisions
¶14 There are two constitutional provisions relevant to the issue in this case. Wisconsin Constitution Article IV, Section 11 provides:
Meeting of legislature. SECTION 11. [As amended Nov. 1881 and April 1968] The legislature shall meet at the seat of government at such time as shall be provided by law, unless convened by the governor in special session, and when so convened no business shall be transacted except as shall be necessary to accomplish the special purposes for which it was convened.
(Emphasis added.) Wisconsin Constitution, Article IV, Section 8 says:
Rules; contempts; expulsion. SECTION 8. Each house may determine the rules of its own proceedings, punish for contempt and disorderly behavior, and with the concurrence of two-thirds of all the members elected, expel a member; but no member shall be expelled a second time for the same cause.
(Emphasis added.)
¶15 The pertinent statute, Wis. Stat. § 13.02, provides:
Regular sessions. The legislature shall meet annually.
(1) The legislature shall convene in the capitol on the first Monday of January in each odd-numbered year, at 2 p.m., to take the oath of office, select officers, and do all other things necessary to organize itself for the conduct of its business, but if the first Monday of January falls on January 1 or 2, the actions here required shall be taken on January 3.
*526 (2) The regular session of the legislature shall commence at 2 p.m. on the first Tuesday after the 8th day of January in each year unless otherwise provided under sub. (3).
(3) Early in each biennial session period, the joint committee on legislative organization shall meet and develop a work schedule for the legislative session, which shall include at least one meeting in January of each year, to be submitted to the legislature as a joint resolution.
(4) Any measures introduced in the regular annual session of the odd-numbered year which do not receive final action shall carry over to the regular annual session held in the even-numbered year.
(Emphasis added.)
C. Constitutional and Statutory Interpretation
¶16 Article IV, Section 11 of the Wisconsin Constitution describes when the Legislature meets: "The legislature shall meet at the seat of government at such time as shall be provided by law, unless convened by the governor in special session[.]" The text of this constitutional provision is plain. No one disputes that this sentence authorizes the Legislature to meet at the State Capitol "at such time as shall be provided by law."[8] All parties agree that the drafters *217 of the Wisconsin Constitution meant the Wisconsin Statutes when they used the phrase "provided by law." We agree that "provided by law" means our statutes, and have specifically *527 said so. See State v. City of Oak Creek, 2000 WI 9, ¶27, 232 Wis. 2d 612, 605 N.W.2d 526 ("[T]he drafters meant statutory law when they used the phrase, 'provided by law.' ") (emphasis added).
¶17 Accordingly, the Wisconsin Constitution authorizes the Legislature to lawfully meet when a statute so provides. Wisconsin Statute § 13.02 is the sole statute addressing when the Legislature can meet. Subsection (1) sets the date, time, and location for the Legislature to convene to take oaths, select officers, and organize. Subsection (2) sets the date and time for the regular session to begin unless the Legislature changes them under sub. (3). Subsection (3) directs that early in the "biennial session" "the joint committee on legislative organization shall meet and develop a work schedule for the legislative session [.]" (Emphasis added.) Subsection (4) permits bills in the first year to carry over to the second year of the biennial session.
¶18 The parties delve deep into past practices of the Legislature, as well as a 1968 constitutional amendment.[9] A historical review, however, is unnecessary to resolve this case. There is no dispute as to the meaning of the governing constitutional text, which requires the Legislature to meet at such time as provided by statutory law. The controversy centers on whether the text of Wis. Stat. § 13.02(3), which authorizes the Legislature's joint committee on legislative organization to develop a work schedule, allows the Legislature to constitutionally convene an extraordinary session.
*528 ¶19 Our analysis therefore turns to the interpretation of Wis. Stat. § 13.02(3). In interpreting a statute's text, we start with the language of the statute and if the meaning of the language is plain, our inquiry ordinarily ends. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. The text of § 13.02(3) is plain. It authorizes the Legislature's joint committee on legislative organization to set the "work schedule" for the biennial term.
¶20 Wisconsin Stat. § 13.02(3) imposes only two statutory limitations on that committee: the work schedule "shall include at least one meeting in January of each year" and must "be submitted to the legislature as a joint resolution." It is uncontroverted that the committee developed a work schedule that included at least one meeting each January of the biennial session period, and that the work schedule was submitted to the Legislature as a joint resolution and was enrolled as JR1.[10]
¶21 The pivotal text within Wis. Stat. § 13.02(3) is "work schedule" and the dispositive question is whether the work schedule can specify when the Legislature will meet. The law itself says so. Given the nature of the legislative function, a "work schedule" for the Legislature necessarily *218 expresses when the body will meet. The Legislature consists of the people's representatives who are elected to meet and enact laws for Wisconsin. State ex rel. Milwaukee Med. Coll. v. Chittenden, 127 Wis. 468, 502, 107 N.W. 500 (1906) ("The constitutional authority vested in the legislature *529 appertains wholly to the making of law."). A "work schedule" in the context of a legislature would be meaningless without specifying when and how to meet. The Legislature cannot perform its constitutionally assigned work unless it meets in the chambers of the Senate and the Assembly at the State Capitol to vote on proposed legislation. The plain text of § 13.02(3), directing a committee of the Legislature to "develop a work schedule for the legislative session," satisfies the "provided by law" requirement under Article IV, Section 11 of the Wisconsin Constitution. The work schedule dictates when the Legislature will meet, in accordance with the constitution.
¶22 The League and the Governor recognize Wis. Stat. § 13.02 as the "law" referenced in Article IV, Section 11 setting forth when the Legislature can meet, but contend this statute limits the Legislature's meeting to the "regular" session only. They argue that the statute does not authorize the "extraordinary" session. While the statute does not use the term "extraordinary" session, the absence of that word in § 13.02 does not make an extraordinary session unconstitutional, just as the absence of the words "floorperiods," and "committee work periods" from the statute doesn't make those meetings unconstitutional either. If "extraordinary sessions" are unconstitutional because the term does not appear in § 13.02, so are "floorperiods" and any other characterization the Legislature adopts to describe its business.
¶23 When asked during oral argument why the nonappearance of "floorperiods" in Wis. Stat. § 13.02 does not render them unconstitutional, the League's counsel pointed to JR1. The League's counsel argued that floorperiods are constitutional because JR1 sets forth floorperiods as part of the regular session. JR1 *530 says no such thing. JR1 mentions floorperiods, but nowhere does it confine floorperiods to regular sessions. The only reference to "regular" sessions within JR1 appears in six paragraphs concerning "bills to governor" in which JR1 sets deadlines for sending bills to the governor that have "been passed by both houses, in regular, extraordinary, or special session." JR1, Section 1, paragraphs (3)(h), (k), (L), (t), (v), and (x). Bills are passed during floorperiods, and JR1 ties floorperiods to all three types of sessions: regular, extraordinary, and special sessions. Floorperiods are either prescheduled in JR1 or they occur in extraordinary or special sessions, which by their nature have not been assigned prescheduled dates.
¶24 The League alternatively suggests that "floorperiods" are fine because they are part of the "regular session." While Wis. Stat. § 13.02 does use the term "regular session," nowhere does the statute say "floorperiods" are part of the "regular session." The term "floorperiods" does not appear in the statute at all. "Floorperiods," like "extraordinary sessions," are terms the Legislature uses in setting its work schedule in order to conduct the business pertinent to the legislative process. The specific terminology it chooses is not prescribed or limited by our constitution or by statute.[11]
*219 ¶25 The League also argues that the Legislature terminated its 2017-18 session when it concluded its "last general-business floorperiod, which was adjourned *531 on March 22, 2018." It contends the conclusion of that floorperiod constituted a sine die adjournment,[12] which prevented the 2017-18 Legislature from reconvening unless the Governor called a special session. Characterizing the conclusion of the March 22, 2018 floorperiod as a sine die adjournment directly conflicts with both the work schedule adopted in JR1, as well as cases defining sine die adjournment.
¶26 The 2017-18 Legislature's session began in January 2017, in accordance with the dates required by Wis. Stat. § 13.02. The Legislature's session continued pursuant to the work schedule enrolled as JR1, which plainly sets forth the beginning and end of the 2017-18 biennial session. The Legislature continued its biennial session until January 7, 2019, consistent with both the text of § 13.02(3) and this court's cases. The Legislature is "in session" continually during the biennial session until a sine die adjournment. State ex rel. Thompson v. Gibson, 22 Wis. 2d 275, 289-90, 125 N.W.2d 636 (1964) (citing State ex rel. Sullivan v. Dammann, 221 Wis. 551, 555, 267 N.W. 433 (1936) ). In Thompson, we held "that one single session may be interrupted by recesses, and valid[ly] continue after a recess as long as such recesses can reasonably be said to be taken for a proper legislative purpose." 22 Wis. 2d at 290, 125 N.W.2d 636. A sine die adjournment occurs only "[w]hen a Legislature ... ceases to exist ... [i]ts officers are no *532 longer officers. Their tenure of office ends at the moment of adjournment." Dammann, 221 Wis. at 559, 267 N.W. 433.
¶27 Neither the record nor JR1 supports a sine die adjournment on March 22, 2018. When the Legislature adjourned on March 22nd, it did so pursuant to JR1, which provides the 2017-18 session ends on January 7, 2019. There is no indication the Legislature altered that date. Further, JR1 established a "limited-business floorperiod" to commence on April 17, 2018, and a "veto review floorperiod" to commence on May 8, 2018. Both of these floorperiods post-date March 22, 2018, directly contradicting the League's notion of a sine die adjournment in March. If the Legislature adjourned sine die on March 22nd, these floorperiods and the additional parts of JR1, Section 1, paragraphs (3)(t)-(x) would be superfluous, as would JR1, Section 1, sub (6), which specifically set the "end of term" as January 7, 2019. Nothing supports the League's position that the Legislature adjourned sine die on March 22, 2018.
¶28 The Wisconsin Constitution mandates that the Legislature meet "at such time as shall be provided by law." The Legislature did so. Wisconsin Stat. § 13.02(3) confers on the Legislature, through its joint committee on legislative organization, the right to construct its own work schedule, which necessarily includes setting times when the Legislature may meet. In addition to being authorized by Article IV, Section 11, this statutory provision is expressly authorized under Article IV, Section 8 of the Wisconsin Constitution, which says: "Each house may determine *220 the rules of its own proceedings." The Legislature's "rules of its own proceedings" include "those rules having 'to *533 do with the process the legislature uses to propose or pass legislation[.]' " Milwaukee Journal Sentinel, 319 Wis. 2d 439, ¶18, 768 N.W.2d 700 (quoting Custodian of Records for the LTSB v. State, 2004 WI 65, ¶30, 272 Wis. 2d 208, 680 N.W.2d 792 ). The constitution does not mandate any procedural rules governing the enactment of legislation; rather, it merely directs the Legislature to prescribe its time of meeting "by law" and empowers the Legislature "to determine the rules of its own proceedings." Because the Legislature met its constitutional obligation to provide by law the time of its meetings, any recourse against errors in the execution of the Legislature's own procedures is properly pursued within the political realm not in courts of law.
D. Separation of Powers
¶29 The League asks this court to invalidate laws enacted by the Legislature based solely on the procedures employed to pass them. This controversy implicates the separation of powers between the legislative and judicial branches of government and how the Legislature may administer those powers within its domain. We are attentive to the constitutional limits on the judicial power to intercede in legislative affairs, and duty-bound to respect them.
¶30 "[O]ne of the fundamental principles of the American constitutional system is that governmental powers are divided among the three departments of government[.]" Goodland v. Zimmerman, 243 Wis. 459, 466, 10 N.W.2d 180 (1943). "Like its federal counterpart, '[o]ur state constitution ... created three branches of government, each with distinct functions *534 and powers,' and '[t]he separation of powers doctrine is implicit in this tripartite division.' " Gabler v. Crime Victims Rights Bd., 2017 WI 67, ¶11, 376 Wis. 2d 147, 897 N.W.2d 384 (quoted source omitted; alterations and ellipsis by Gabler ). "Three clauses of the Wisconsin Constitution embody this separation: Article IV, Section 1 ('[t]he legislative power shall be vested in a senate and assembly'); Article V, Section 1 ('[t]he executive power shall be vested in a governor'); and Article VII, Section 2 ('[t]he judicial power ... shall be vested in a unified court system')." Gabler, 376 Wis. 2d 147, ¶11, 897 N.W.2d 384 (alterations and ellipsis by Gabler ).
¶31 By vesting certain powers exclusively within each of the three co-equal branches of government, the drafters of the Wisconsin Constitution recognized the importance of dispersing governmental power in order to protect individual liberty and avoid tyranny. See id., ¶¶4-9, 11. Two years ago, this court exhaustively examined the separation of powers principles underlying the United States Constitution, which "inform our understanding of the separation of powers under the Wisconsin Constitution." Id., ¶11. "As Madison explained when advocating for the Constitution's adoption, neither the legislature nor the executive nor the judiciary 'ought to possess, directly or indirectly, an overruling influence over the others in the administration of their respective powers.' " Id., ¶4 (quoting Federalist No. 48, at 305 (James Madison) (Clinton Rossiter ed., 1961)).
¶32 Accordingly, "the Constitution gives 'to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others,' therefore guaranteeing 'security against a gradual concentration of the several powers in the same department.' "
*535 Gabler, 376 Wis. 2d 147, ¶7, 897 N.W.2d 384 (quoting Federalist No. 51, s="http://nrs.harvard.edu/urn-3:HLS.Libr.US_Case_Law.Schema.Case_Body:v1" id="p221" href="#p221" data-label="221" data-citation-index="1" class="page-label">*221supra ¶31, at 318-19 (James Madison)). In the same fashion as the United States Constitution, the Wisconsin Constitution preserves the independence of each branch vis-aÌ-vis the others and precludes each branch from obstructing the performance of another branch's constitutional duties. United States v. Klein, 80 U.S. (13 Wall.) 128, 147, 20 L.Ed. 519 (1872) ("It is the intention of the Constitution that each of the great co-ordinate departments of the government-the Legislative, the Executive, and the Judicial-shall be, in its sphere, independent of the others."); see also Loving v. United States, 517 U.S. 748, 757, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996) ("Even when a branch does not arrogate power to itself, moreover, the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties." (citing Mistretta v. United States, 488 U.S. 361, 397-408, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) ).
¶33 "Each branch has exclusive core constitutional powers into which other branches may not intrude." State v. Horn, 226 Wis. 2d 637, 643, 594 N.W.2d 772 (1999) (citing State ex rel. Friedrich v. Circuit Court for Dane Cty., 192 Wis. 2d 1, 13, 531 N.W.2d 32 (1995) ). "This court is highly mindful of the separation of powers. It does not engage in direct confrontation with another branch of government unless the confrontation is necessary and unavoidable." State v. Moore, 2015 WI 54, ¶91, 363 Wis. 2d 376, 864 N.W.2d 827 ; see also Integration of Bar Case, 244 Wis. 8, 48, 11 N.W.2d 604 (1943) ("The state suffers essentially by every ... assault of one branch of the government upon another; and it is the duty of all the co-ordinate branches scrupulously to avoid even all seeming of such." (quoting In re Goodell, 39 Wis. 232, 240 (1875) ).
*536 ¶34 "[C]ore zones of authority are to be 'jealously guarded' by each branch of government." Barland v. Eau Claire Cty., 216 Wis. 2d 560, 573, 575 N.W.2d 691 (1998) (citing Friedrich, 192 Wis. 2d at 14, 531 N.W.2d 32 ). "The co-ordinate branches of the government ... should not abdicate or permit others to infringe upon such powers as are exclusively committed to them by the Constitution." Rules of Court Case, 204 Wis. 501, 514, 236 N.W. 717 (1931). "Each branch's core powers reflect 'zones of authority constitutionally established for each branch of government upon which any other branch of government is prohibited from intruding. As to these areas of authority, ... any exercise of authority by another branch of government is unconstitutional.' " Gabler, 376 Wis. 2d 147, ¶31, 897 N.W.2d 384, (quoting State ex rel. Fiedler v. Wisconsin Senate, 155 Wis. 2d 94, 100, 454 N.W.2d 770 (1990) (ellipsis by Gabler )). In Gabler, this court invalidated a legislative action because it invaded the exclusive province of the judiciary and threatened judicial independence. In this case, we reverse a judicial encroachment on the exercise of powers constitutionally vested exclusively in the Legislature.
E. The Legislative Power
¶35 "The people bestowed much power on the legislature, comprised of their representatives whom the people elect to make the laws." Gabler, 376 Wis. 2d 147, ¶60, 897 N.W.2d 384. The separation of powers "operates in a general way to confine legislative powers to the legislature." Goodland, 243 Wis. at 467, 10 N.W.2d 180. "From the very nature of things, the judicial power cannot legislate *537 nor supervise the making of laws." State ex rel. Rose v. Superior Court of Milwaukee Cty., 105 Wis. 651, 675, 81 N.W. 1046 (1900).
¶36 The judiciary may not interfere with the Legislature's execution of *222 its constitutional duties. "[T]his court will not, under separation of powers concepts and affording the comity and respect due a co-equal branch of state government, interfere with the conduct of legislative affairs." State ex rel. La Follette v. Stitt, 114 Wis. 2d 358, 368, 338 N.W.2d 684 (1983). The proper judicial role does encompass consideration of the constitutionality of the laws enacted by the Legislature. "When the legislative process has been completed, a court may then in a proper case consider whether the power of the legislature has been constitutionally exercised or whether the law enacted in the exercise of its power is valid." Goodland, 243 Wis. at 469, 10 N.W.2d 180. The process by which laws are enacted, however, falls beyond the powers of judicial review. Specifically, the judiciary lacks any jurisdiction to enjoin the legislative process. "Because under our system of constitutional government, no one of the co-ordinate departments can interfere with the discharge of the constitutional duties of one of the other departments, no court has jurisdiction to enjoin the legislative process at any point." Id. at 468, 10 N.W.2d 180. For example, "[i]f a court can intervene and prohibit the publication of an [A]ct, the court determines what shall be law and not the legislature." Id. Judicial interference with the procedures employed by the Legislature to pass laws "invades the constitutional power of the legislature to declare what shall become law. This it may not do." Id. While it is the duty of the judiciary to interpret the law and to strike any law *538 whose substance violates the constitution, the judiciary has no authority "to interfere with the right of the legislature to enact and put in force a law." Id. at 469, 10 N.W.2d 180.
¶37 How the Legislature meets, when it meets, and what descriptive titles the Legislature assigns to those meetings or their operating procedures constitute parts of the legislative process with which the judicial branch "has no jurisdiction or right" to interfere. State ex rel. Ozanne v. Fitzgerald, 2011 WI 43, ¶8, 334 Wis. 2d 70, 798 N.W.2d 436 (quoted source omitted).
The judicial department has no jurisdiction or right to interfere with the legislative process. That is something committed by the constitution entirely to the legislature itself. It makes its own rules, prescribes its own procedure, subject only to the provisions of the constitution.
Goodland, 243 Wis. at 467, 10 N.W.2d 180. No court may "intermeddle in purely internal legislative proceedings[.]" Milwaukee Journal Sentinel, 319 Wis. 2d 439, ¶18, 768 N.W.2d 700.
¶38 With respect to legislative procedures, the judicial role consists of reviewing whether "a law was actually passed by the respective houses in accordance with constitutional requirements." La Follette, 114 Wis. 2d at 366, 338 N.W.2d 684 (quoting McDonald v. State, 80 Wis. 407, 411-12, 50 N.W. 185 (1891) ). "Further than this the courts will not go." McDonald, 80 Wis. at 412, 50 N.W. 185. The constitutional requirement at issue in this case limits the Legislature to meeting only at times provided by law. Wisconsin Stat. § 13.02(3) satisfies the Wisconsin *539 Constitution by authorizing the Legislature's own committee to set its work schedule.
¶39 While we have examined the work schedule the Legislature adopted in JR1 to govern its proceedings, generally "this court will not determine whether internal operating rules or procedural statutes have been complied with by the legislature in the course of its enactments." La Follette, 114 Wis. 2d at 364, 338 N.W.2d 684. We reviewed JR1 for the limited purpose of ensuring the Legislature's compliance with the constitution's directives governing the exercise of legislative powers. Those *223 directives are few in number and broadly stated. As pertinent to this case, the constitution requires the Legislature to meet at such time as the Legislature itself statutorily decrees, and confers discretion on the Legislature to determine for itself the rules of its own proceedings. This court "will not intermeddle in what we view, in the absence of constitutional directives to the contrary, to be purely legislative concerns[.]" Id. In convening the December 2018 extraordinary session, the Legislature fully complied with all applicable constitutional mandates. Our judicial review proceeds no further.
¶40 Declining to "inquire into whether the legislature has complied with legislatively prescribed formalities in enacting a statute" springs from the principles of "separation of power and comity." Id., at 364-65, 338 N.W.2d 684. "[T]he legislature's adherence to the rules or statutes prescribing procedure is a matter entirely within legislative control and discretion, not subject to judicial review unless the legislative procedure is mandated by the constitution." Id., at 365, 338 N.W.2d 684. "If the legislature fails to follow self-adopted procedural rules in *540 enacting legislation, and such rules are not mandated by the constitution, courts will not intervene to declare the legislation invalid." Id.
¶41 The Legislature remains accountable to the people of Wisconsin for any failure to follow its self-imposed statutory or procedural rules. The judiciary serves as a check on the Legislature's actions only to the extent necessary to ensure the people's elected lawmakers comply with our constitution in every respect. Provided the Legislature acts in accordance with its mandates, the constitution confers no power on the judiciary to enjoin or invalidate laws as a consequence for deficiencies in the implementation of internally-imposed legislative procedures.
III. CONCLUSION
¶42 The December 2018 extraordinary session of the Wisconsin Legislature was constitutional. The text of Article IV, Section 11 of the Wisconsin Constitution directs the Legislature to meet at a time provided by law. Wisconsin Stat. § 13.02(3) constitutes the law authorizing the Legislature to set its own biennial work schedule. The extraordinary session comports with the constitution because it occurred as provided by law. The terminology the Legislature chooses to accomplish the legislative process is squarely the prerogative of the Legislature. The Wisconsin Constitution itself affords the Legislature absolute discretion to determine the rules of its own proceedings. Wis. Const. art. IV, § 8. Recognizing the Legislature's rules and procedures reside solely within the legislative domain, we review only whether the Legislature acted in accordance *541 with the Wisconsin Constitution. Having so concluded, this court's jurisdiction ends.[13]
By the Court. -Order of the circuit court is vacated and the cause is remanded for dismissal.
DALLET, J. dissents, joined by ABRAHAMSON, J., and A.W. BRADLEY, J. (opinion filed).

The petition was filed by the League of Women Voters of Wisconsin, Disability Rights Wisconsin, Inc., Black Leaders Organizing for Communities, Guillermo Aceves, Michael J. Cain, John S. Greene and Michael Doyle, in his official capacity as Clerk of Green County. For ease of reference, we refer to all petitioners collectively as the "League."

The three Acts passed during the December 2018 extraordinary session and subsequently signed by the Governor were 2017 Wisconsin Act 368, 2017 Wisconsin Act 369, and 2017 Wisconsin Act 370.

All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

The circuit court's March 21, 2019 order also denied the Legislature's motion to dismiss as well as the Legislature's motion for a stay of the temporary injunction. We need not specifically address the circuit court's action on either motion. Orders from the court of appeals and this court already addressed the circuit court's denial of the Legislature's motion for a stay. Our disposition vacates the circuit court's order in its entirety and requires dismissal of the League's declaratory judgment action. This decision upholds the constitutionality of their enactment in an extraordinary session.

The 82 nominees confirmed during the extraordinary session involved appointments to various "State authorities, boards, councils, and commissions."

For the remainder of the opinion, we refer to Judge Niess as "the circuit court."

This court recounted in detail the procedural history of this case in its order dated April 30, 2019, which addressed the Legislature's request for temporary relief pending our review.

Article IV, Section 11 authorizes two times when the Legislature may meet: (1) when "provided by law"; and (2) when the governor calls a "special session." It is undisputed that the Governor did not call a "special session"; therefore, we consider only whether the extraordinary session was "provided by law."

Before the 1968 constitutional amendment, Article IV, Section 11 read:
Meeting of legislature. The legislature shall meet at the seat of government at such time as shall be provided by law, once in two years, and no oftener, unless convened by the governor, in special session[.]

No one disputes that the Legislature complied with JR1.

The terminology chosen by the Legislature occasionally finds its way into individual statutes. See, e.g., Wis. Stat. § 13.625(1m)(b) 1 ("A contribution to a candidate for legislative office may be made during that period only if the legislature has concluded its final floorperiod, and is not in special or extraordinary session.") (emphasis added).

"Sine die" means "without day"; adjournment sine die means: "The ending of a deliberative assembly's or court's session without setting a time to reconvene." Adjournment sine die, Black's Law Dictionary (10th ed. 2014); see also State ex rel. Sullivan v. Dammann, 221 Wis. 551, 559, 267 N.W. 433 (1936) ("When a Legislature adjourns sine die, it ceases to exist[.]").

The League also contends the extraordinary sessions were unlawful because no quorum of the Legislature called the extraordinary session. The Wisconsin Constitution requires a quorum "to do business." Wis. Const. art. IV, § 7 ("a majority of each shall constitute a quorum to do business"). Nothing in our constitution requires a "quorum" to call an extraordinary session. Rules pertaining to extraordinary sessions are developed by the Legislature as rules of its own proceedings, with which this court will not "intermeddle." Milwaukee Journal Sentinel v. DOA, 2009 WI 79, ¶18, 319 Wis. 2d 439, 768 N.W.2d 700 ; Wisconsin Const., art. IV, § 8 ("Each house may determine the rules of its own proceedings.").