# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2022AP1999-W |

COMPLETE TITLE: State of Wisconsin ex rel. Antonio S. Davis,
          Petitioner,
     v.
Circuit Court for Dane County, Honorable Ellen
K. Berz and
State of Wisconsin,
          Respondents.

---

REVIEW OF A DECISION OF THE COURT OF APPEALS

---

| | |
|---|---|
| OPINION FILED: | March 26, 2024 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 9, 2023 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Dane |
|   JUDGE: | Ellen K. Berz |

JUSTICES:
PROTASIEWICZ, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion. HAGEDORN, J., filed a concurring opinion. ZIEGLER, C.J., filed a dissenting opinion.

---

ATTORNEYS:

For the petitioner, there were briefs filed by *Kelsey Loshaw,* assistant state public defender. There was an oral argument by *Kelsey Loshaw,* assistant state public defender.

For the respondents, there was a brief filed by *Jennifer L. Vandermeuse,* assistant attorney general, with whom on the brief was *Joshua L. Kaul,* attorney general. There was an oral argument by *Jennifer L. Vandermeuse,* assistant attorney general, and *Abigail C.S. Potts*, assistant attorney general.

An amicus curiae brief was filed by *Ellen Henak, Robert R. Henak,* and *Henak Law Office, S.C., Milwaukee,* on behalf of Wisconsin Association of Criminal Defense Lawyers.

An amicus curiae brief was filed by *Kelli S. Thompson, Faun M. Moses,* and *Office of the State Public Defender, Madison,* on behalf of Wisconsin State Public Defender.

2024 WI 14

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2022AP1999-W
(L.C. No. 2022CM1737)

STATE OF WISCONSIN        :        IN SUPREME COURT

**State of Wisconsin ex rel. Antonio S. Davis,**

       **Petitioner,**

       v.

**Circuit Court for Dane County, Honorable Ellen K. Berz and State of Wisconsin,**

       **Respondents.**

**FILED**

**MAR 26, 2024**

Samuel A. Christensen
Clerk of Supreme Court

PROTASIEWICZ, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion. HAGEDORN, J., filed a concurring opinion. ZIEGLER, C.J., filed a dissenting opinion.

REVIEW of a decision of the Court of Appeals. *Affirmed and cause remanded.*

¶1 JANET C. PROTASIEWICZ, J. The State charged Antonio Davis with misdemeanor battery and disorderly conduct. Before the State Public Defender (SPD) could appoint counsel for Davis, a court commissioner conducted a combined initial appearance and arraignment, entered a not guilty plea on Davis's behalf, and

scheduled further proceedings before Judge Ellen K. Berz. Sixty-five days later, the SPD appointed counsel for Davis. Six days later, Davis filed a request for substitution of judge. The circuit court denied the request as untimely.

¶2 Davis filed a petition for supervisory writ arguing that the circuit court had a plain duty to treat his request for substitution of judge as timely. The court of appeals denied the petition,[1] and we review that denial here.

¶3 Under Wis. Stat. § 971.20(4) (2021-22),[2] a defendant must request substitution "before making any motions to the trial court and before arraignment." In Dane County, where Davis's case is pending, a local rule purportedly extends that deadline in misdemeanor cases to "20 days after the initial appearance."[3]

---

[1] Davis v. Cir. Ct. for Dane Cnty., No. 2022AP1999-W, unpublished slip op. (Wis. Ct. App. Dec. 13, 2022).

[2] The full text of Wis. Stat. § 971.20(4) is: "Substitution of trial judge originally assigned. A written request for the substitution of a different judge for the judge originally assigned to the trial of the action may be filed with the clerk before making any motions to the trial court and before arraignment."

All subsequent references to the Wisconsin Statutes are to the 2021-22 version.

[3] See Dane County Local Rule 208, which reads: "In all [Criminal Traffic] and [Criminal Misdemeanor] cases the defendant shall have 20 days after the initial appearance to file a request for substitution of the assigned judge."

2

¶4 Here, Davis made his request after both of those deadlines had expired. He argues that the circuit court should have nevertheless treated his request for substitution of judge as timely based on the "government-created obstacle" exception outlined in State v. Zimbal, 2017 WI 59, ¶¶40-47, 375 Wis. 2d 643, 896 N.W.2d 327. Alternatively, he argues that the circuit court should have treated his request as timely based on the doctrine of equitable tolling.

¶5 This case presents us with two questions:

¶6 First, did Davis forfeit the issues he brings to this court? Specifically, did he forfeit the "government-created obstacle" issue by changing his identified obstacle between his petition for review and initial brief? And did he forfeit the equitable tolling issue by failing to raise it below?

¶7 Second, is Davis entitled to a supervisory writ directing the circuit court to treat his request for substitution of judge as timely?

¶8 We answer the questions presented as follows:

¶9 First, assuming without deciding that Davis forfeited the issues that he now presents to this court, we exercise our discretion to address them. Doing so allows us to clarify the procedure for appealing a circuit court order denying a request for substitution of judge as untimely.

3

¶10 Second, Davis is not entitled to a supervisory writ. We conclude that the circuit court did not have a plain duty to treat Davis's request as timely under Wis. Stat. § 971.20(4), Dane County Local Rule 208, a government-created obstacle exception, or a theory of equitable tolling.

¶11 We also take this opportunity to clarify that a petition for supervisory writ is not the preferred vehicle for appellate review of a judge's ruling on the timeliness of a request for substitution of judge that was filed after arraignment.

¶12 Accordingly, we affirm the court of appeals.

## I. BACKGROUND

¶13 We do not have a complete record of the circuit court proceedings concerning Davis's initial appearance, arraignment, and request for substitution of judge. Indeed, while our rules contemplate a full record and creation of a transcript for appeals, they do not require such a record for supervisory writ actions.[4]

¶14 Here, the record shows that Antonio Davis was arrested on August 16, 2022, and he applied for representation through

---

[4] Compare Wis. Stat. §§ (Rule) 809.11(4) (mandating transcript requests for appeals), and (Rule) 809.15(1)(a) (listing components of a full record on appeal), with (Rule) 809.51 (not requiring such a record for supervisory writ actions).

4

the SPD the next day. Two weeks later, on August 30, 2022, the State filed a complaint[5] charging Davis with misdemeanor battery and disorderly conduct, and Davis made his first court appearance.

¶15 At the August 30, 2022 appearance, a Dane County court commissioner held both an initial appearance and an arraignment. Notably, a court[6] is not required to hold both proceedings at the same appearance. Our statutes set out requirements for an initial appearance——a defendant's first court appearance after arrest——and for an arraignment——where a defendant enters a plea.[7] While Wis. Stat. § 971.05 allows arraignments to be held in "the court which conducted the initial appearance," our statutes do not require that the initial appearance and arraignment happen at the same appearance.[8]

---

[5] The complaint did not identify Davis's judge.

[6] These proceedings may occur in front of a judge or a commissioner.

[7] See Wis. Stat. §§ 970.01-02 (setting out procedures for an initial appearance, including delivery of the complaint and informing defendants of the charges against them and of their rights); 971.05 (setting out procedures for an arraignment, including entry of a plea).

[8] In felony cases——not at issue here——a court cannot hold arraignment until after a preliminary examination or waiver of preliminary examination. See Wis. Stat. §§ 971.02; 971.05. And a defendant has a right to counsel at the preliminary examination. State v. O'Brien, 2014 WI 54, ¶40, 354 Wis. 2d 753, 850 N.W.2d 8. Thus, a defendant in a felony case who seeks appointed counsel will typically have counsel prior to arraignment.

¶16 At the time of Davis's combined initial appearance and arraignment, the SPD had not yet appointed counsel. So, Davis received limited-scope representation from an SPD attorney who was assigned to argue bail and receive the complaint. We do not have a transcript of this court appearance, but we know the court commissioner entered a not guilty plea on Davis's behalf and scheduled further proceedings before Judge Ellen K. Berz.

¶17 On the day of his combined initial appearance and arraignment, Davis received two documents identifying his judge: a bail bond form, which noted that his case was assigned to "Trial Judge – Br 11," and a Notice of Hearing, which identified his judge as "Ellen K Berz."

¶18 Sixty-five days after Davis's combined initial appearance and arraignment, on November 3, 2022, the SPD appointed counsel.[9] Six days later, on November 9, 2022, Davis filed a request for substitution of judge. Davis argued that the request should be considered timely, citing Wis. Stat. § 971.20(4), Dane County Local Rule 208, and a series of cases from this court and the court of appeals. The circuit court nevertheless denied Davis's request as untimely.

---

[9] By chance, the appointed counsel was the same attorney who provided limited-scope representation for Davis at his combined initial appearance and arraignment.

6

¶19 Davis filed a petition for supervisory writ in the court of appeals. He argued that a government-created obstacle[10]——the SPD's inability to appoint counsel before the statutory deadline for filing a request for substitution—— prevented him from timely filing. So, he argued, the circuit court had a plain duty to treat his request for substitution as timely. The court of appeals denied the writ.

¶20 Davis petitioned this court for review. In his petition for review, he again argued that the SPD's inability to appoint counsel was a government-created obstacle. He also raised an alternative theory: that the circuit court should have applied equitable tolling. We granted his petition. In his briefing, Davis argued that the government-created obstacle was the court's sua sponte arraignment before Davis had notice of his judge and before appointment of counsel.

## II. ANALYSIS

### A. Forfeiture

¶21 The respondents ask us to dismiss this appeal because Davis forfeited the issues raised in his initial brief. First, respondents argue that Davis is procedurally barred from

---

[10] See State v. Zimbal, 2017 WI 59, ¶40, 375 Wis. 2d 643, 896 N.W.2d 327 (allowing an "exception to the rule of strict adherence" to substitution-request deadlines when "a government-created obstacle prevents a defendant from complying with the statutory deadline").

7

bringing his government-created obstacle argument. They argue that Davis's identified government-created obstacle changed between his petition for review and brief. They compare Davis's petition for review, which identified one government-created obstacle——"the SPD's inability to appoint counsel before the deadline for requesting a substitution"——with Davis's brief, where he said the obstacle was "the court['s] sua sponte ent[ry of] a plea" before Davis was appointed counsel and before he knew his assigned judge. Second, the respondents argue that Davis forfeited his equitable tolling argument because he failed to raise it in any lower court.

¶22 But forfeiture "is a rule of judicial administration," and courts "may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case." State v. Counihan, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530. Assuming, without deciding, that Davis is procedurally barred from making these arguments, we exercise our discretion to address them in order to clarify the procedure for challenging a circuit court's order denying a request for substitution of judge as untimely. See State v. Wilson, 2017 WI 63, ¶51 n.7, 376 Wis. 2d 92, 896 N.W.2d 682 (opting to address an "important issue" despite alleged forfeiture).

¶23 With regard to Davis's government-created obstacle argument, we address the version of the argument that Davis

8

presents in his briefing——namely, that the government-created obstacle was the timing of Davis's arraignment. See State v. Wilson, 2015 WI 48, ¶86 n.15, 362 Wis. 2d 193, 864 N.W.2d 52 ("[I]t is within our discretion to review any substantial and compelling issue which the case presents." (quoting Univest Corp. v. Gen. Split Corp., 148 Wis. 2d 29, 32, 435 N.W.2d 234 (1989))).

### B. Timeliness of Requests for Substitution

¶24 This court and the court of appeals have said that a defendant should seek review of a judge's ruling on the form and timeliness of a request for substitution "preferably" by bringing a petition for supervisory writ. Clark v. State, 92 Wis. 2d 617, 631, 286 N.W.2d 344 (1979); State ex rel. Tessmer v. Cir. Ct. for Racine Cnty., 123 Wis. 2d 439, 441, 367 N.W.2d 235 (Ct. App. 1985) ("A petition for a supervisory writ is the preferable route for review of the trial court's ruling on the form and timeliness of a request for substitution of judge.").

¶25 A supervisory writ is "an extraordinary and drastic remedy" which serves a "narrow function." State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶¶17, 24, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). A party seeking a supervisory writ must show that: (1) an appeal is an inadequate remedy; (2) grave hardship or irreparable harm will

9

result; (3) the trial court had a plain duty to act and violated that duty; and (4) the petitioner requested relief promptly. State ex rel. DNR v. Wis. Ct. App., Dist. IV, 2018 WI 25, ¶9, 380 Wis. 2d 354, 909 N.W.2d 114 (citing Kalal, 271 Wis. 2d 633, ¶17).

¶26 This case hinges on the third requirement——plain duty. A circuit court has a plain duty when its "responsibility to act [is] imperative." Kalal, 271 Wis. 2d 633, ¶22 (quoted source omitted). The court's duty must be "clear and unequivocal." Id. (quoted source omitted). As such, courts grant supervisory writs only for "non-discretionary" duties. See id., ¶24.

¶27 We are sympathetic to the fact that Davis did not have the full assistance of counsel at the time of arraignment despite his efforts to seek SPD representation. Further, we are mindful of the stresses to the criminal justice system caused by heavy caseloads and delays in SPD appointments.

¶28 Nonetheless, we hold that the circuit court did not have a plain duty to treat Davis's request for substitution of judge as timely. And we take this opportunity to clarify the preferred route for reviewing a circuit court's ruling on the timeliness of a request for substitution that was filed after arraignment.

### 1. Government-Created Obstacle

¶29 In Wisconsin, a criminal defendant has "a right to . . . one substitution of a judge." Wis. Stat. § 971.20(2). The defendant must request substitution of judge "before making any motions to the trial court and before arraignment." § 971.20(4). In an attempt to extend this deadline, Dane County courts created a rule allowing misdemeanor defendants "20 days after the initial appearance to file a request for substitution." See Dane County Local Rule 208.

¶30 Here, all parties agree that Davis filed his request after the deadlines in the statute and local rule expired.[11] Davis argues that his request should nevertheless be considered timely under our precedent.

¶31 We have said that a request for substitution may sometimes be treated as timely, even if it is untimely under Wis. Stat. § 971.20(4). See Zimbal, 375 Wis. 2d 643, ¶¶40-47 (identifying "exception[s] to the rule of strict adherence" to statutory substitution-request deadlines). In particular, we have said that an untimely request may be considered timely when "a government-created obstacle" prevents a defendant from

---

[11] Since there is no dispute that the request was filed after both deadlines had expired, we need not decide here whether the local rule may extend the time for filing a substitution request beyond that provided by Wis. Stat. § 971.20(4).

meeting the statutory deadline. Id., ¶40. One such government-created obstacle comes from the "Baldwin-Tessmer-Tinti arraignment cases." Id., ¶41 (citing State ex rel. Tinti v. Cir. Ct. for Waukesha Cnty., 159 Wis. 2d 783, 790, 464 N.W.2d 853 (Ct. App. 1990); Tessmer, 123 Wis. 2d at 443; Baldwin v. State, 62 Wis. 2d 521, 530-32, 215 N.W.2d 541 (1974)).

¶32 Under Baldwin-Tessmer-Tinti, an untimely request for substitution may be treated as timely "when a criminal defendant is arraigned before he receives notice of which judge will hear his case." Id. In each of the Baldwin-Tessmer-Tinti cases, the defendant did not know the identity of his judge until after arraignment. Tinti, 159 Wis. 2d at 790; Tessmer, 123 Wis. 2d at 443; Baldwin, 62 Wis. 2d at 529. Without that information, those courts concluded that the defendant could not exercise the right of substitution intelligently. See Tinti, 159 Wis. 2d at 790; Tessmer, 123 Wis. 2d at 443; Baldwin, 62 Wis. 2d at 531; see also Clark, 92 Wis. 2d 617, 628 ("[T]he key to the statutory

right of substitution [is] the defendant's ability to exercise his right of substitution intelligently.").[12]

¶33 Here, Davis argues that he faced a similar government-created obstacle. A court commissioner arraigned him before the SPD appointed counsel and before he knew his assigned judge. Thus, Davis says, under Baldwin-Tessmer-Tinti the circuit court had a plain duty to treat his request for substitution as timely.[13] We disagree for two reasons.

¶34 First, although Davis asserts that he did not know his assigned judge until after he entered his plea, the record is unclear. We have no transcript, and there has been no evidentiary hearing on this point. All we know is that Davis

---

[12] Justice Rebecca Grassl Bradley's concurrence advocates for "overrul[ing] Baldwin." See Justice Rebecca Grassl Bradley's concurrence, ¶47. No party has asked us to overrule Baldwin, and "[w]e do not step out of our neutral role to develop or construct arguments for parties; it is up to them to make their case." Doe 1 v. Madison Metro. Sch. Dist., 2022 WI 65, ¶35, 403 Wis. 2d 369, 976 N.W.2d 584 (quoting Serv. Emps. Int'l Union, Loc. 1 v. Vos, 2020 WI 67, ¶24, 393 Wis. 2d 38, 946 N.W.2d 35).

[13] Davis also argues that the court had a plain duty to treat the request as timely because it had a general duty to apply the law to the facts. We have said that such a command is too vague and malleable to create a plain duty. See State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, ¶81, 363 Wis. 2d 1, 866 N.W.2d 165 ("The obligation of a judge to correctly find facts and apply the law is not the type of plain legal duty contemplated by the supervisory writ procedure, 'as it would extend supervisory jurisdiction to a virtually unlimited range of decisions . . . .'" (quoting State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶24, 271 Wis. 2d 633, 681 N.W.2d 110)).

received two relevant documents on the day of his arraignment: a notice of hearing which named Judge Berz and a bail bond form which identified the assigned judicial branch. We do not know if Davis received these documents before or after his arraignment. And we do not know whether the court commissioner told Davis who his assigned judge would be during the arraignment. Without evidence that Davis knew his assigned judge only after arraignment, the obstacle from the Baldwin-Tessmer-Tinti cases does not exist here. See Zimbal, 375 Wis. 2d 643, ¶41 (identifying the obstacle).

¶35 Second, even if we accept Davis's assertion that he did not know his assigned judge before arraignment, the court did not have a plain duty to treat his request as timely under our precedent. Davis made his request 71 days after his combined initial appearance and arraignment. None of the Baldwin-Tessmer-Tinti cases say a request would be timely under such a delay. See Tinti, 159 Wis. 2d at 791 (deciding a request was timely when it was filed four days after arraignment); Tessmer, 123 Wis. 2d at 444 (seven days).[14]

---

[14] Likewise, our decision in Baldwin does not suggest that a request filed 71 days after arraignment is timely. There, we found Baldwin's request untimely. Baldwin v. State, 62 Wis. 2d 521, 532-33, 215 N.W.2d 541 (1974). Moreover, we suggested Baldwin's request would have been timely under deadlines specific to Milwaukee County's calendaring system. See id. at 530.

14

¶36 We recognize that Davis was unrepresented during the first 65 days of the 71-day delay, but this does not change our conclusion that there was no plain duty. We have never held that a circuit court must consider whether a defendant is represented when assessing the timeliness of a request for substitution.[15] It may be the case that a circuit court should consider a defendant's lack of representation when assessing the timeliness of a request for substitution. But we cannot say that the circuit court here had a plain duty to do so, because no law requires it. See Kalal, 271 Wis. 2d 633, ¶25 ("[A] plain, clear, non-discretionary, and imperative duty" is "necessary for a supervisory writ.").

¶37 We conclude that under these facts and our precedent, the circuit court had no plain duty to treat the request for substitution as timely because of a government-created obstacle.

### 2. Equitable Tolling

¶38 Davis also argues that his request for substitution should have been treated as timely based on the equitable tolling doctrine. We conclude that the circuit court did not

---

[15] Even in Zimbal, where we "restart[ed]" the statutory clock after assignment of counsel, we did so "[u]nder the unique facts of [that] case," which included the circuit court telling the defendant to wait to file a request for substitution of judge. See Zimbal, 375 Wis. 2d 643, ¶52. That unique factual situation is not present here.

15

have a plain duty to treat the request as timely under a theory of equitable tolling.

¶39 Equitable tolling is a remedy that courts use to toll statutory deadlines when justice requires. See State ex rel. Griffin v. Smith, 2004 WI 36, ¶¶36-37, 270 Wis. 2d 235, 677 N.W.2d 259 (listing examples of when our courts have tolled deadlines due to "equitable considerations"). Courts may invoke equitable tolling when a party misses a deadline due to factors outside the party's control. See id., ¶37. For instance, we have said equitable tolling applies in the context of a pro se prisoner who properly deposits a court document in an outgoing prison mail system, but misses a filing deadline due to prison mail processing times. See State ex rel. Nichols v. Litscher, 2001 WI 119, ¶32, 247 Wis. 2d 1013, 635 N.W.2d 292.

¶40 Here, the circuit court did not have a plain duty to equitably toll the substitution-request deadline for two reasons. First, no court has said that equitable tolling applies to Davis's situation. Davis cites the concurrence in Zimbal as authority that equitable tolling should apply to his request. See Zimbal, 375 Wis. 2d 643, ¶¶54-73 (Roggensack, J., concurring). But that concurring opinion is not binding precedent. And even if it were, the concurrence argued for tolling in the context of a judge directing a defendant to wait to file a request for substitution——a circumstance that is not

16

present here. See id., ¶72. Thus, it is not a clear and unequivocal mandate. See Kalal, 271 Wis. 2d 633, ¶22 ("A plain duty 'must be clear and unequivocal.'" (quoted source omitted)).

¶41 Second, Davis seeks application of an equitable doctrine——a poor fit with the concept of a plain duty. Equitable tolling inherently requires a case-by-case exercise of discretion. See Williams v. Kaerek Builders, Inc., 212 Wis. 2d 150, 162, 568 N.W.2d 313 (Ct. App. 1997) ("The decision to provide an equitable remedy rests within the circuit court's discretion."). Short of a judicial mandate to apply equitable tolling in a specific situation, a circuit court will never have a plain duty to apply a discretionary remedy. Without such a duty, the failure to exercise discretion in a particular way cannot support the issuance of a supervisory writ. See Kalal, 271 Wis. 2d 633, ¶24 (holding that supervisory writs are for "non-discretionary duties"). In short, the circuit court here had no plain duty to apply equitable tolling.

### 3. Procedure for Appellate Review

¶42 In the past, we have said a petitioner should seek review of a judge's ruling on the form and timeliness of a request for substitution "preferably" by bringing a petition for supervisory writ. Clark, 92 Wis. 2d at 631; see also Tessmer, 123 Wis. 2d at 441 (suggesting petitions for supervisory writ are the "preferable route" for review).

17

¶43 But our analysis here illustrates why a supervisory writ can be a poor vehicle for reviewing a circuit court's decision to deny a request for substitution that was filed after arraignment. Davis's claims fail in this supervisory writ posture due to factors that could undermine review for future petitioners. To start, in a supervisory writ posture, appellate courts may decide a case based on the existence of a plain duty rather than address the substantive issue. Indeed, we have done so here. Similarly, appellate courts may be reluctant to find a plain duty when doing so requires mandating application of an equitable doctrine. See Kalal, 271 Wis. 2d 633, ¶25 ("[A] plain, clear, non-discretionary, and imperative duty" is "necessary for a supervisory writ."). Last, we are more likely to have incomplete records under a supervisory writ posture.[16]

¶44 We clarify that a petition for supervisory writ is not the preferred vehicle for appellate review of a judge's ruling on the timeliness of a request for substitution of judge that was filed after arraignment. In that situation, a petitioner should file a petition for interlocutory appeal or an appeal from a final judgment or order, not a petition for supervisory writ.

III. CONCLUSION

---

[16] See supra note 4.

18

¶45  In sum, the circuit court had no plain duty to treat Davis's request for substitution of judge as timely, and the court of appeals correctly denied the petition for supervisory writ.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause is remanded to the circuit court for further proceeding consistent with this opinion.

19

¶46 REBECCA GRASSL BRADLEY, J. *(concurring)*. Presented with a simple question, this court should provide a simple answer. Davis asks whether the circuit court violated a plain duty when it denied his request to substitute the judge originally assigned to his case. It did not. Wisconsin Stat. § 971.20(4) requires a defendant who wishes to substitute the judge originally assigned to his trial to file a substitution request "before arraignment." Davis filed his substitution request 71 days after his arraignment. The circuit court does not have a plain duty to accept an untimely substitution request. Although this court comes to the right conclusion, it does nothing to address the errors this court made interpreting § 971.20 in <u>Baldwin v. State</u>, 62 Wis. 2d 521, 215 N.W.2d 541 (1974).[1]

---

[1] Justice Brian Hagedorn correctly observes that Davis forfeited all the arguments he made before this court. He also correctly notes that the majority's reason for reaching the merits is nonsense——the majority does not need to reach the merits to address the court's preferred method of receiving claims like Davis's. Because the majority needlessly addresses the merits and applies prior cases that are unsound in principle, I also address the merits, applying the statute's text.

The majority opts to apply <u>Baldwin</u> and its progeny because "[n]o party has asked us to overrule <u>Baldwin</u>." Majority op., ¶32 n.12. The majority forgets that "[l]itigants do not dictate the decisions of this court; the law does. As proclaimed over 160 years ago, '[w]e sit here to decide the law as we find it, and not as the parties or others may have supposed it to be.'" <u>St. Augustine Sch. v. Taylor</u>, 2021 WI 70, ¶102, 398 Wis. 2d 92, 961 N.W.2d 635 (Rebecca Grassl Bradley, J., dissenting) (second alteration in original) (quoting <u>Ross v. Bd. of Outagamie Cnty. Supervisors</u>, 12 Wis. 26, 44 (1860) (Dixon, C.J., dissenting)).

1

¶47 In Baldwin, this court improperly rewrote Wis. Stat. § 971.20. The Baldwin decision gives a defendant a "reasonable time" to exercise his substitution right after he discovers the identity of the judge, even if the statutory deadline has already lapsed. Baldwin has repeatedly led courts to ignore the text of § 971.20. E.g., State ex rel. Tinti v. Cir. Ct. for Waukesha Cnty., Branch 2, 159 Wis. 2d 783, 464 N.W.2d 853 (Ct. App. 1990). Instead of applying Baldwin, as the majority does, I would overrule Baldwin and simply apply the statute's text.

## I. BACKGROUND

¶48 Officers arrested Davis for two offenses, and the state charged him with misdemeanor disorderly conduct and misdemeanor battery. At Davis's initial appearance, the court entered a plea of not guilty on his behalf. Seventy-one days after his initial appearance, Davis filed a request to substitute the judge originally assigned to his trial, Judge Ellen K. Berz, who denied the request as untimely.

¶49 Davis petitioned the court of appeals for a supervisory writ directing the circuit court to grant Davis's request for judicial substitution. The court of appeals denied the petition. This court correctly affirms the court of appeals, but misguidedly applies Baldwin's erroneous interpretation of Wis. Stat. § 971.20.

## II. DISCUSSION

### A. Methodology

¶50 In Kalal this court "confirmed textualism is the correct methodology for statutory interpretation," "binding" all

2

courts in Wisconsin to adhere to it when interpreting statutes. Sanders v. State of Wis. Claims Bd., 2023 WI 60, ¶13, 408 Wis. 2d 370, 992 N.W.2d 126 (lead opinion). As explained in Kalal, the goal of statutory interpretation is to determine a statute's objective meaning, focusing primarily on the words of the statute. State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. This court has held time and time again that if the meaning of a statute is plain, our interpretive inquiry ends. E.g., id., ¶45; Wis. Carry, Inc. v. City of Madison, 2017 WI 19, ¶18, 373 Wis. 2d 543, 892 N.W.2d 233 (calling this rule the "the bedrock of the judiciary's methodology"). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Kalal, 271 Wis. 2d 633, ¶45 (citations omitted). A text's scope, context, and purpose "are perfectly relevant to a plain-meaning interpretation of an unambiguous statute as long as" they are "ascertainable from" the statute's text and structure. Id., ¶48.

¶51 This court's adherence to textualism is grounded in and fundamental to the rule of law and democratic governance. Textualism is the only method of statutory interpretation that properly respects the legislature's authority to make policy choices. "[T]he object of interpretation is to enforce a decision that is attributable to the legislature." See John F. Manning & Matthew C. Stephenson, Legislation and Regulation 22 (1st ed. 2010). The people never gave this court "the power to

3

second-guess the legislature's policy choices[,] [and] [j]udicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute." Sanders, 408 Wis. 2d 370, ¶48 (internal quotation marks and citations omitted). "While textualism cannot prevent the incursion of policy preferences into legal analysis[,] . . . without textualism, such encroachment is certain." Wis. Jud. Comm'n v. Woldt, 2021 WI 73, ¶92, 398 Wis. 2d 482, 961 N.W.2d 854 (Rebecca Grassl Bradley, J., concurring in part, dissenting in part); see Kalal, 271 Wis. 2d 633, ¶49 n.8 (A "methodology . . . that calls for consultation of extrinsic, non-textual sources of interpretation in every case, regardless of whether the language of the statute is clear[,] . . . subordinates the statutory text and renders the analysis more vulnerable to subjectivity."). "[D]iscovering the meaning of a statute is not just a worthy endeavor, but also an exhaustive recitation of the judiciary's authority when interpreting a statute." Wis. Carry, 373 Wis. 2d 543, ¶20 n.15. Applying our longstanding interpretive methodology to Wis. Stat. § 971.20 illustrates how Baldwin rewrote the statute, impermissibly altering the policy determinations made by the legislature.

### B. Wis. Stat. § 971.20

¶52 The legislature enacted Wis. Stat. § 971.20 in 1969. See § 63, ch. 255, Laws of 1969. Although the legislature has modified § 971.20 over the years, the words of the statute pertinent to this decision have remained the same. In its

4

original iteration, Wis. Stat. § 971.20(1) (1969-70) provided that a "defendant may file . . . for a substitution of a new judge for the judge assigned to the trial of that case. Such request shall . . . be made before making any motion or before arraignment."[2] Notably, the statute required the request to be filed "before arraignment" regardless of whether the judge was the judge originally assigned to the trial. Over time, the legislature added new deadlines for filing a substitution request. For example, Wis. Stat. § 971.20(1) (1975-76) allowed a defendant to substitute the judge assigned to his trial if the request was filed "before making any motion or before arraignment." If a new judge was assigned to his trial, the defendant could file his request "any time before making any motion before such new judge or before commencement of any proceeding before such new judge." § 971.20(1).

¶53 With § 3, ch. 137, Laws of 1981, the legislature repealed and recreated Wis. Stat. § 971.20. Obtaining a substitution of the judge originally assigned to a trial is currently governed by § 971.20(4). The legislature has not altered § 971.20(4) since its creation. Although Baldwin interpreted Wis. Stat. § 971.20(1) (1971-72), Baldwin has bearing on this court's interpretation and application of § 971.20(4) because courts have applied its reasoning to

---

[2] The statute also provided, "a request for the substitution of a judge may also be made by the defendant at the preliminary examination except that the request must be filed at the initial appearance or at least 5 days before the preliminary examination unless the court otherwise permits." Wis. Stat. § 971.20(3) (1969-70).

§ 971.20(4), as well as other subsections of § 971.20.  State ex rel. Tessmer v. Cir. Ct. Branch III, In & For Racine Cnty., 123 Wis. 2d 439, 367 N.W.2d 235 (Ct. App. 1985); Tinti, 159 Wis. 2d 783; State v. Zimbal, 2017 WI 59, 375 Wis. 2d 643, 896 N.W.2d 327.

¶54  Wisconsin Stat. § 971.20(4) creates a simple rule for a defendant who wants to substitute the judge originally assigned to his trial:  "A written request for the substitution of a different judge for the judge originally assigned to the trial of the action may be filed with the clerk before making any motions to the trial court and before arraignment."[3] Unsurprisingly, dictionaries define "before" to mean "previous to" or "earlier than."  Before, Random House Dictionary of the English Language 134 (1st unabridged ed. 1966).  Wisconsin Stat. § 971.05 provides that an arraignment has four elements:  (1) the arraignment occurs in open court; (2) if the defendant appears to not have counsel, "the court shall advise the defendant of the defendant's right to counsel"; (3) the defendant shall be read the information or complaint unless the

---

[3] The original iteration of Wis. Stat. § 971.20 required a defendant to file the substitution request "before making any motion or before arraignment."  Wis. Stat. § 971.20(1) (1969-70) (emphasis added).  Since 1981, the statute has allowed for the substitution of the judge originally assigned to a defendant's trial if requested "before making any motions to the trial court and before arraignment."  Wis. Stat. § 971.20(4) (1981-82) (emphasis added).  It doesn't appear that changing the "or" to an "and" makes any interpretive difference because courts interpreted the "or" as an "and" in the prior iterations of the statute.  Clark v. State, 92 Wis. 2d 617, 626, 286 N.W.2d 344 (1979).

6

defendant waives such a reading; and (4) the defendant makes his plea unless the defendant has filed a motion that requires a determination before the entry of a plea. Under the current iteration of the § 971.20(4), a defendant must file a substitution request before the statutorily defined arraignment occurs. The statute provides no other means to substitute the judge originally assigned to the trial; indeed, the statute declares, "The right of substitution shall be exercised as provided in this section." § 971.20(2). In short, the current version of § 971.20(4) does not authorize this court to create an ever-evolving common law of judicial substitution; it provides an easy-to-apply rule: A defendant must file a substitution request before making any motions to the circuit court and before arraignment or the request must be denied.

¶55 Applying the plain language of Wis. Stat. § 971.20(4), the circuit court properly denied Davis's substitution request. Because Davis filed his request 71 days after his arraignment, his request was untimely. See State v. Beaty, 57 Wis. 2d 531, 542, 205 N.W.2d 11 (1973). A circuit court does not have a plain duty to accept untimely substitution requests. See State v. Bell, 62 Wis. 2d 534, 536, 215 N.W.2d 535 (1974) (citations omitted) (holding a circuit court properly denied a substitution request because it was filed after the statutory deadline); Kalal, 271 Wis. 2d 633, ¶¶22-24 (defining what constitutes a plain duty). This case should end there; no further analysis is required. Because of Baldwin, however, the majority opinion does not end there——despite the clarity of the statutory text.

7

¶56 The Baldwin court rewrote Wis. Stat. § 971.20 under the veneer of statutory interpretation. The Baldwin court held a defendant must have a "reasonable time" to exercise the statutory right to substitution after the defendant learns the identity of the judge assigned to his trial. Baldwin, 62 Wis. 2d at 530-33. To afford the defendant a reasonable time to exercise the statutory right, the court gave an "enlarged definition" to the word "arraignment," unsupported by the text of the statute. Id. at 532. Courts have applied Baldwin's tortured analysis of § 971.20 without critical thought. This court should overturn Baldwin and return to applying the plain meaning of § 971.20.

## C. The Baldwin Decision

¶57 In Baldwin, the defendant filed his substitution request on the date of his trial. The court in Baldwin was asked whether the defendant's substitution request, under Wis. Stat. § 971.20(1) (1971-72), was timely. Id. at 526-28. At the time, Milwaukee County used calendaring judges for arraignments. If a guilty plea were entered at the arraignment, the case would conclude; if a not guilty plea were entered, the court would assign the case to a judge, who might not be the calendaring judge presiding over the entering of a plea. Id. at 529. In Baldwin, the defendant was arraigned, after which the judge originally assigned to the defendant's trial disqualified himself and a new judge was assigned to the defendant's trial. Id. at 526-28.

8

¶58 The Baldwin court interpreted Wis. Stat. § 971.20(1) (1971-72), which provided that a "defendant may file with the clerk a written request for a substitution of a new judge for the judge assigned to the trial of that case. Such request . . . shall be made before making any motion or before arraignment." The Baldwin court acknowledged a plain-meaning interpretation of the statute "requires that [a substitution] request be made prior to arraignment." Baldwin, 62 Wis. 2d at 529; see also Clark v. State, 92 Wis. 2d 617, 626, 286 N.W.2d 344 (1979). However, the Baldwin court decided this clear rule does not "work[] well" when a county's calendaring procedure prevents a defendant from knowing the identity of the judge assigned to his trial prior to arraignment. Baldwin, 62 Wis. 2d at 529. The court also determined the plain meaning of the statute would violate the right to a fair trial for some defendants. Id. at 530.

¶59 To fix these perceived infirmities, the court altered the statute. The court held, "The right to the substitution of a judge must have a reasonable time limit for its exercise." Id. at 532. Toward that end, the court created an "enlarged definition of 'arraignment'" to apply under similar circumstances. Id. "[I]n a calendaring procedure, such as is used in Milwaukee [C]ounty, the arraignment is only initiated at the calendaring of the case and the plea of not guilty entered then is for the purpose of obtaining a judge who will actually hear the case," and "[t]he arraignment is completed upon the confirmation of the plea of not guilty before the judge to whom

9

the case is assigned for trial when he sets the date for trial." Id. at 530.[4]

¶60 According to the court, its proffered interpretation "witnesse[d] and g[ave] effect to the predominant intention of the legislature" to "'afford a substitution of a new judge assigned to the trial of that case.'" Id. Like its predecessor statute, Wis. Stat. § 971.20 (1971-72) was "an expression of the 'legislative intent that a person's right to a fair trial (should) be observed.'" Id. at 532 (quoting Meverden v. State, 258 Wis. 628, 634, 46 N.W.2d 836 (1951)). According to the Baldwin court, a plain-meaning interpretation would make "it impossible to obtain the objective of this section and would frustrate the objective of this statute." Id. at 530. Overriding the text with its ostensible "intent," the court decided to "apply as reasonably as possible [the language of the statute] to all cases to attain its object." Id. at 532. Finally, the court discovered "support [for its interpretation] in the history of the section." Id. at 530. The judicial committee's comments to the statute "reference[d]" the Illinois and Montana substitution statutes, which set the filing date at a time when the defendant would know the identity of the judge. Id. at 530-31.

---

[4] The court deemed the defendant's substitution request late even under its expansive interpretation of Wis. Stat. § 971.20(1) (1971-72) because he waited until the day of trial to make his request. Baldwin v. State, 62 Wis. 2d 521, 532-33, 215 N.W.2d 541 (1974).

¶61 Baldwin's policy-driven interpretation of the original iteration of Wis. Stat. § 971.20 invited courts to ignore the text of the statute, and the text of other substitution statutes,[5] during the ensuing decades. Over the years, courts have relied on Baldwin for the proposition that "a defendant [must have] an opportunity to request a substitution for a reasonable period of time after he learns specifically which judge will be assigned to his case." State ex rel. Akavickas v. Cnty. Ct. of Marathon Cnty., 77 Wis. 2d 297, 298-99, 252 N.W.2d 386 (1977) (per curiam); see also Tessmer, 123 Wis. 2d 443-44; Tinti, 159 Wis. 2d 789-90. Baldwin convinced courts there may be "exceptions" to § 971.20(4)'s unambiguous "before arraignment" requirement, such as if the defendant does not know the identity of the judge assigned to his trial. See Zimbal, 375 Wis. 2d 643, ¶3 n.2. Baldwin must be overturned.

### D. The Interpretive Errors of the Baldwin Court

#### 1. The Right to an Unbiased Judge

¶62 The court in Baldwin erred when it refused to apply the plain meaning of Wis. Stat. § 971.20(1) (1971-72) because such an application "would deny in many cases the constitutional right to a fair trial . . . ." Baldwin, 62 Wis. 2d at 530. The court never cited a single source for its claim that the statute violates the right to an impartial judge for some defendants. Nor did the court explain how the right to an unbiased judge

---

[5] State ex rel. Akavickas v. Cnty. Ct. of Marathon Cnty., 77 Wis. 2d 297, 298-99, 252 N.W.2d 386 (1977) (per curiam) (Wis. Stat. § 345.315(1)); State ex rel. Tarney v. McCormack, 99 Wis. 2d 220, 235, 298 N.W.2d 552 (1980) (Wis. Stat. § 801.58(1)).

11

would be violated by applying the plain meaning of the statute. While every defendant is entitled to a trial before an impartial judge, Wis. Const. art. I, § 8; State ex rel. Mitchell v. Bowman, 54 Wis. 2d 5, 6-7, 194 N.W.2d 297 (1972) (per curiam), the ability to exercise a peremptory judicial substitution is unrelated to judicial bias against the defendant. See Mitchell, 54 Wis. 2d at 6-7. It is similarly unrelated to whether a judge has a personal interest in the case's outcome. Tumey v. Ohio, 273 U.S. 510 (1927). Exercising the statutory right of substitution without knowing the identity of the judge assigned to the trial does not make it any more or less likely that "there is 'a serious risk of actual bias . . . .'" Miller v. Carroll, 2020 WI 56, ¶24, 392 Wis. 2d 49, 944 N.W.2d 542 (quoting Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 884 (2009)). The unavailability of peremptory judicial substitution does not deprive a defendant of his right to an impartial judge.

¶63 There is "no constitutional right to the peremptory substitution of a judge." State ex rel. Garibay v. Cir. Ct. for Kenosha Cnty., 2002 WI App 164, ¶9, 256 Wis. 2d 438, 647 N.W.2d 455 (citing State v. Holmes, 106 Wis. 2d 31, 46, 315 N.W.2d 703 (1982)). The legislature provided the statutory right of substitution to protect the right to an unbiased judge. Holmes, 106 Wis. 2d at 38, 46-47, 55. The statutory right to substitution serves as a prophylactic protection of the constitutional right to an unbiased judge and does not embody the right itself. See id. at 46; Zimbal, 375 Wis. 2d 643, ¶74 (Ziegler, J., concurring). The statutory right of substitution

12

is a "matter of legislative grace, not constitutional mandate. As such, the legislature may limit or qualify that right" as it sees fit. Garibay, 256 Wis. 2d 438, ¶9.

¶64 Even if applying the plain meaning of the statute would violate due process when the defendant doesn't know the identity of the assigned judge prior to arraignment, the Baldwin court erred by impermissibly rewriting the statute. State v. Zarnke, 224 Wis. 2d 116, 140, 589 N.W.2d 370 (1999) (internal quotation marks omitted) (quoting United States v. X-Citement Video, 513 U.S. 64, 86 (1994) (Scalia, J., dissenting)) ("[A]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of . . . judicially rewriting it."). Under the constitutional-doubt canon, if a statute raises serious constitutional questions, a court should interpret the statute to avoid those constitutional questions. State v. Hager, 2018 WI 40, ¶31, 381 Wis. 2d 74, 911 N.W.2d 17. "[I]t is a cardinal rule that courts should avoid interpreting a statute in a way that would render it unconstitutional when a reasonable interpretation exists that would render the legislation constitutional." State v. Hamdan, 2003 WI 113, ¶27 n.9, 264 Wis. 2d 433, 665 N.W.2d 785 (citation omitted). Critically, the court can apply only reasonable or plausible interpretations to the text under these rules of interpretation. Id.; Hager, 381 Wis. 2d 74, ¶31. This court can avoid questions of unconstitutionality only if the statute is ambiguous. Fleming v. Amateur Athletic Union of U.S., Inc.,

13

2023 WI 40, ¶31 n.10, 407 Wis. 2d 273, 990 N.W.2d 244 (citations omitted). It isn't.

¶65 The Baldwin court did not supply a reasonable or plausible interpretation of Wis. Stat. § 971.20(1) (1971-72); it supplied a contrived, textually unsupportable interpretation. The Baldwin court assigned the word "arraignment" different meanings depending on the facts of a particular case, lending the word a chameleon-like character. Baldwin, 62 Wis. 2d at 530, 532 (providing an "enlarged definition of 'arraignment'" only when "a calendaring procedure, such as is used in Milwaukee [C]ounty," is used). Not only is it confounding that the court gave "arraignment" different meanings depending on the facts of the case, the Baldwin court's "enlarged definition" of arraignment conflicts with the statutory definition. Compare id. at 530, with Wis. Stat. § 971.05 (1971-72).

¶66 Baldwin turned the statute's clear rule (file "before arraignment") into a vague standard (file within a "reasonable time") without any explanation or textual support. The words of Wis. Stat. § 971.20, taken collectively or individually, do not give a defendant a "reasonable time" to file a substitution request after learning the identity of the judge assigned to his case. The Baldwin court added words to the text of the statute because it felt the legislature's rule didn't "work[] well." Baldwin, 62 Wis. 2d at 529. "One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." Fond Du Lac Cnty. v. Town of

14

Rosendale, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989) (citation omitted).

### 2. Legislative Intent and Statutory Purpose

¶67 The Baldwin court justified its interpretation of Wis. Stat. § 971.20(1) (1971-72) on the ground it gave effect to the legislature's "intent" while a plain-meaning interpretation of the statute frustrated the objective of the statute. Baldwin, 61 Wis. 2d at 530. Statutory interpretation is not a quest to effectuate the legislature's intent; its goal is to ascertain the objective meaning of a statute and apply that meaning in the case at hand. "This court has long disavowed reliance on so-called 'legislative intent,' the search for which leads to pure judicial activism." Cobb v. King, 2022 WI 59, ¶44, 403 Wis. 2d 198, 976 N.W.2d 410 (Rebecca Grassl Bradley, J., dissenting) (citing Townsend v. ChartSwap, LLC, 2021 WI 86, ¶24, 399 Wis. 2d 599, 967 N.W.2d 21); accord Kalal, 271 Wis. 2d 633, ¶¶43-44. Although the objectives of a statute are valid considerations in a plain-meaning analysis to the extent they can be ascertained from the words of the statute, Kalal, 271 Wis. 2d 633, ¶48, statutory "purpose[s] cannot produce an interpretation that the statute's language rules out of bounds." Stephen Breyer, Making Our Democracy Work: A Judge's View 98 (2010). A statute's manifest objectives may help a court choose between "textually permissible interpretation[s]." see Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 63 (2012). But a statute's objectives cannot give "a word [or] sentence . . . a meaning that it cannot bear." Id. at 31; State

15

v. Hinkle, 2019 WI 96, ¶28, 389 Wis. 2d 1, 935 N.W.2d 271 (quoting Scalia & Garner, supra, at 57). After all, "no legislation pursues its purposes at all costs." Rodriguez v. United States, 480 U.S. 522, 525-26 (1987) (per curiam). The Baldwin court violated these fundamental rules of interpretation by adding words to a statute and stretching the existing words of the statute past their breaking point.

### 3. The History of Wis. Stat. § 971.20

¶68 Contrary to the claims of the Baldwin court, the "history of [Wis. Stat. § 971.20]" does not "support" its interpretation of the statute. Baldwin, 62 Wis. 2d at 530. Although the judicial committee's note to the statute did "reference" the Illinois and Montana judicial substitution statutes, id., the Baldwin court misused that reference to support its conclusion. The reference to the Illinois and Montana substitution statutes was made in the context of changing the terminology used to describe the right to judicial substitution; the new statute would not use the term "affidavit of prejudice," which the prior substitution statute, Wis. Stat. § 956.03(1) (1967-68), used:

> Note: This is new terminology replacing present s. 956.03 (1). 'Affidavit of Prejudice' has normally not meant prejudice since most defendants have no knowledge of the judge and have filed the affidavit solely for tactical purposes usually on an attorney's advice. This terminology is felt to be more accurate. (See Ill. Rev. Code Chap. 38, s. 114-5, Mont. Rev. Code 95-1709.)

Note, § 63, ch. 255, Laws of 1969. Despite the fact the reference made to the Illinois and Montana statutes was about

16

terminology, the court cited the Illinois and Montana statutes as support for the claim that a defendant needs to know the identity of the judge assigned to his trial prior to the substitution deadline.

¶69 Not only did the court in Baldwin deceptively misuse the judicial committee's note, the statutory history of Wis. Stat. § 971.20 reveals the legislature denied the court any authority to provide exceptions to the statute's deadline. "Unlike legislative history, prior versions of statutory provisions were enacted law; as such, statutory history constitutes an intrinsic source that 'is part of the context in which we interpret the words used in a statute.'" Brey v. State Farm Mut. Auto. Ins. Co., 2022 WI 7, ¶20, 400 Wis. 2d 417, 970 N.W.2d 1 (quoting Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581). Prior to the creation of § 971.20, Wis. Stat. § 956.03 (1967-68) gave defendants the right of substitution. Section 956.03(1) provided that in felony cases, the request needed to be made "within 20 days after [the defendant's] arraignment and before the case is called for trial." For misdemeanors, the request needed to be made "at arraignment or at the time the defendant demands a jury trial if one is demanded." § 956.03(1). Importantly, the statute had an exception——the deadline could be "extended for cause but not more than 10 days." § 956.03(1). The enactment of § 971.20 eliminated the "for cause" exception. See Wis. Stat. § 971.20 (1969-70). Likewise, the current iteration of the statute does not include any exceptions for the statutory

17

deadline. "[A] change in the language of a prior statute presumably connotes a change in meaning." Scalia & Garner, supra, at 256. The removal of the "for cause" exception to the deadline suggests the deadlines in § 971.20 are to be enforced as they are written, and this court cannot extend the deadline in § 971.20(4) for filing a substitution request past arraignment. This court cannot restore what the legislature specifically removed from a statute.

### 4. Policy

¶70 Buried beneath the Baldwin court's handwringing over fair trials, legislative intent, statutory objectives, and legislative history lies the obvious truth: The court simply disagreed with the policy decisions made by the legislature. The court did not think the statute's deadline "works well" in all cases. Baldwin, 62 Wis. 2d at 529. The Baldwin court's interpretation of Wis. Stat. § 971.20(1) (1971-72) was designed to improve what the court regarded as the legislature's imperfect work. The Baldwin court "observed what the legislature had written, decided it didn't like it, and replaced the statutory text with what the court deemed to be . . . preferable . . . ." Town of Wilson v. City of Sheboygan, 2020 WI 16, ¶73 n.12, 390 Wis. 2d 266, 938 N.W.2d 493 (Rebecca Grassl Bradley, J., concurring). But the court's role is not to reweigh the pros and cons of a policy and correct any perceived errors in the legislature's judgments, especially when it comes to deadlines: "Deadlines are inherently arbitrary; fixed dates, however, are often essential to accomplish

18

necessary results." United States v. Boyle, 469 U.S. 241, 249 (1985).

¶71 Courts act beyond their authority by adding words to a law, even when they believe their handiwork will make the law better accord with justice. "The problem is that although properly informed human minds may agree on what a text means, human hearts often disagree on what is right." Scalia & Garner, supra, at 348. "[I]t is precisely because people differ over what is sensible and what is desirable that we elect those who will write our laws——and expect courts to observe what has been written." Id. at 22. That is why "[o]ur unwillingness to soften the import of [the legislature's] chosen words even if we believe the words lead to a harsh outcome is longstanding." See Lamie v. U.S. Tr., 540 U.S. 526, 538 (2004); Mannino v. Davenport, 99 Wis. 2d 602, 615, 299 N.W.2d 823 (1981). The appropriate judicial response to a law that leads to harsh results is not to legislate from the bench, but to "take the statute as we find it." Anderson v. Wilson, 289 U.S. 20, 27 (1933).

¶72 By adding words to Wis. Stat. § 971.20, the Baldwin court not only violated foundational principles of statutory interpretation, it invaded the legislature's constitutionally assigned domain, "arrogating to itself the power to make law." St. Augustine Sch. v. Taylor, 2021 WI 70, ¶116, 398 Wis. 2d 92, 961 N.W.2d 635 (Rebecca Grassl Bradley, J., dissenting). The court's decision in Baldwin "reflects the philosophy that judges should endure whatever interpretive distortions it takes in

19

order to correct a supposed flaw in the statutory machinery." King v. Burwell, 576 U.S. 473, 515 (Scalia, J., dissenting). Our constitution counters that dangerous philosophy, enshrining a separation of powers between the three branches of government. The people of Wisconsin gave the legislature——not this court—— "[t]he legislative power." Wis. Const. art. IV, § 1. The legislature is the only body in this state with the constitutional authority to make and modify laws. See League of Women Voters v. Evers, 2019 WI 75, ¶35, 387 Wis. 2d 511, 929 N.W.2d 209. In contrast, the people gave this court "[t]he judicial power of this state." Wis. Const. art. VII, § 2. This court does not create laws, nor does it fix laws that fail to meet their objectives. State ex rel. Rose v. Superior Ct. of Milwaukee Cnty., 105 Wis. 651, 675, 81 N.W. 1046 (1900). Instead, this court has a more modest and circumscribed constitutional role——interpreting and applying laws as written. Gabler v. Crime Victims Rts. Bd., 2017 WI 67, ¶37, 376 Wis. 2d 147, 897 N.W.2d 384. This court in Baldwin overstepped its constitutionally assigned role by rewriting § 971.20 without any authority to do so.

### 5. Baldwin's Progeny

¶73 Courts applying Baldwin showcase the extent to which the Baldwin court usurped the legislature's policy-making role. Following Baldwin, the court of appeals held that if a defendant does not receive "adequate notice of the assigned judge in advance of arraignment, the statute's filing deadlines are relaxed in order to allow a defendant to intelligently exercise

20

the right of substitution." Tinti, 159 Wis. 2d at 789-90 (first citing Tessmer, 123 Wis. 2d at 443; and then citing Baldwin, 62 Wis. 2d at 529). In Zimbal, this court added to Baldwin's atextual interpretation of Wis. Stat. § 971.20. The Zimbal court held § 971.20's deadlines are not to be enforced if a circuit court told the defendant the substitution issue would be addressed only after trial counsel is appointed. 375 Wis. 2d 643, ¶40. According to the Zimbal court, this exception to the deadlines aligns with Baldwin, Tessmer, and Tinti, which allow for an exception to the deadline "when a government-created obstacle prevents a defendant from complying with the statutory deadline." Id. Under such circumstances, the court proclaimed it too "problematic" to apply the statute's actual deadline, id., ¶48; instead, the court engaged in a balancing test to determine if the defendant filed his substitution request within a reasonable time: "We again look to the arraignment cases, which have balanced the importance of giving effect to the legislative intent expressed in Wis. Stat. § 971.20 and preventing a defendant from using a request as a technique to disrupt scheduled calendaring or delay a scheduled trial." Id., ¶50 (citations omitted). Such balancing belongs to the legislature, which already balanced those interests in the text of § 971.20. The judiciary lacks any authority to reweigh those interests and create case-by-case exceptions to statutory deadlines. See Flynn v. DOA, 216 Wis. 2d 521, 529, 576 N.W.2d 245 (1998).[6]

---

[6] The Zimbal court euphemistically stated it would not require the defendant to "strict[ly] adhere[]" to the statutory

21

¶74 The majority follows Zimbal's lead, stating "an untimely request may be considered timely when 'a government-created obstacle' prevents a defendant from meeting the statutory deadline."  Majority op., ¶31 (quoting Zimbal, 375 Wis. 2d 643, ¶40).  But nowhere in Wis. Stat. § 971.20 is there any reference to "government-created obstacles."  It is a court-created criterion at odds with the law's text.  Instead of applying Baldwin and its progeny, this court should overrule the decision.

### III.  CONCLUSION

¶75 The majority correctly concludes the circuit court did not have a plain duty to accept Davis's tardy substitution request.  But the majority errs by perpetuating the Baldwin court's usurpation of legislative power by atextually interpreting the judicial substitution statute.  "Rather than rewriting the law under the pretense of interpreting it," King, 576 U.S. at 516 (Scalia, J., dissenting), this court should leave it to the legislature to fix any infirmities in Wis. Stat. § 971.20's text.  Section 971.20(4) requires a defendant to file a substitution request "before arraignment."  Only the legislature possesses the authority to change that.  Baldwin should be overruled and its reasoning abandoned.  I would apply the statute's plain meaning and hold the circuit court

---

deadline.  State v. Zimbal, 2017 WI 59, ¶40, 375 Wis. 2d 643, 896 N.W.2d 327.  Such language disguises the fact that the court would not require the defendant to adhere to the statute's deadline at all.

22

properly denied Davis's substitution request because it was filed after arraignment. I respectfully concur in the judgment.

¶76 BRIAN HAGEDORN, J. *(concurring)*. In a petition for a supervisory writ, the question is whether we should force the circuit court to do something it had a plain duty to do. Yet before us, the legal theory Davis presents for why the circuit court had such a duty is entirely different than the one he argued below and in his petition for review. He also adds a brand new argument regarding equitable tolling not raised below at all. Davis forfeited these arguments, full stop. The best course of action would be to hold him to his forfeiture and call it a day.

¶77 The majority disagrees, however, and overlooks the forfeiture—ostensibly to clarify the proper procedure for raising judicial substitution questions. But it doesn't need to overlook the forfeiture to address this point. And while I agree that a supervisory writ is particularly ill-suited to the kind of claims raised here,[1] the majority attempts to do more. It dives head-first into the merits and seems to blaze at least some new legal ground on the forfeited questions.

¶78 Forfeiture should not be overlooked so easily though; it is not just procedural nitpicking. When we allow litigants to present a wholly different case to us than they did below, we put ourselves in the awkward position of "telling a lower court

---

[1] I'm not sure whether this court should tell parties how best to press their claims. In any event, a supervisory writ is a poor fit for the claims raised here, as the majority emphasizes.

1

it was wrong when it was never presented with the opportunity to be right."[2]   This is especially so in this request for a supervisory writ where we are asked to order the circuit court to comply with a legal command that it was never asked to obey in the first place.   In the end, although well-intentioned, the majority says more than it should, and risks confusing the law rather than clarifying it.   I respectfully concur in the judgment.

---

[2] Tory A. Weigand, Raise or Lose: Appellate Discretion and Principled Decision-Making, 17 Suffolk J. Trial & App. Advoc. 179, 186 (2012) (cleaned up).

¶79 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting).* The majority answers a question of its own choosing, rather than the question presented in the petition for review. The majority could, as Justices Rebecca Grassl Bradley and Brian Hagedorn do in their respective concurrences, answer questions that meet the criteria for this court's review. But the majority chooses instead to merely restate prior law. I dissent because this case should have been dismissed as improvidently granted. We accept cases based on statutory criteria which require that there be "real and significant question of federal or state constitutional law" or that lead to "develop[ing], clarify[ing], or harmon[izing] the law." Wis. Stat. § (Rule) 809.62(1r). There is no new law development in the majority opinion. Additionally, Davis argues different issues than that presented in his petition for review. Because neither the majority nor Davis follow the court's order to answer the question presented in the petition for review, and the majority opinion develops no new law, this case should be dismissed as improvidently granted.

¶80 This court does not grant every petition for review. Wisconsin Stat. § (Rule) 809.62(1r) instructs that when exercising our discretion to grant or deny a petition for review:

> CRITERIA FOR GRANTING REVIEW. Supreme court review is a matter of judicial discretion, not of right, and will be granted only when special and important reasons are presented. The following . . . indicate criteria that will be considered:
>
> (a) A real and significant question of federal or state constitutional law is presented.

1

(b) The petition for review demonstrates a need for the supreme court to consider establishing, implementing or changing a policy within its authority.

(c) A decision by the supreme court will help develop, clarify or harmonize the law, and

1. The case calls for the application of a new doctrine rather than merely the application of well-settled principles to the factual situation; or

2. The question presented is a novel one, the resolution of which will have statewide impact; or

3. The question presented is not factual in nature but rather is a question of law of the type that is likely to recur unless resolved by the supreme court.

(d) The court of appeals' decision is in conflict with controlling opinions of the United States Supreme Court or the supreme court or other court of appeals' decisions.

(e) The court of appeals' decision is in accord with opinions of the supreme court or the court of appeals but due to the passage of time or changing circumstances, such opinions are ripe for reexamination.

§ (Rule) 809.62(1r). Davis argued that our review was proper because he satisfied at least two of those criteria.[1]

¶81 In granting Davis's petition for review, our order stated that "the petition for review is granted and that pursuant to Wis. Stat. § (Rule) 809.62(6), the petitioner may

---

[1] Davis argued that the question presented was "a purely legal issue that is likely to recur unless the Supreme Court grants review and develops the law governing exceptions to the deadline for filing requests for substitution of judge." Davis also argued that our review was proper "because there was a need for the supreme court to consider establishing policy within its authority." See Wis. Stat. § (Rule) 809.62(1r)(b), (c).

2

not raise or argue issues not set forth in the petition for review unless otherwise ordered by the court".[2] <u>Davis v. Cir. Ct. for Dane Cnty.</u>, No. 2022AP1999-W, unpublished order (Wis. Mar. 31, 2023) (granting petition for review). The issue presented was

> [w]hether the [State Public Defender's] inability to appoint counsel before the deadline for requesting a substitution of judge expires is a "government created obstacle" that interferes with defendant's intelligent exercise of his right of substitution[.] Alternatively, whether the doctrine of equitable tolling tolls the deadline for filing a request for substitution of judge until the defendant is appointed counsel[.]

But Davis, in his briefing and at oral argument, argued a different issue than the one ordered by the court, namely, "[w]hen the court sua sponte entered a plea on behalf of an unrepresented defendant awaiting appointment of counsel before giving notice of assignment of judge, did that procedure result in a government-created obstacle that deems Mr. Davis' request for substitution timely?" The majority may begin to consider portions of Davis's newly developed issue, but it does not definitively answer it, and that was not the issue for which review was granted.[3] Instead, the majority dodges the issue

---

[2] <u>See</u> Wis. Stat. § (Rule) 809.62(6) ("If a petition . . . is granted, the petitioner . . . cannot raise or argue issues not set forth in the petition . . . .").

[3] <u>See, e.g.</u>, majority op., ¶23 ("With regard to Davis's government-created obstacle argument, we address the version of the argument that Davis presents in his briefing—namely, that the government-created obstacle was the timing of Davis's arraignment.").

3

presented and proceeds to the merits anyway, merely restating existing law.

¶82 We are not an error-correcting court; we are a law-developing court.[4] This case is not law-developing. I would dismiss this case as improvidently granted.

¶83 For the foregoing reasons, I respectfully dissent.

---

[4] See State v. Schumacher, 144 Wis. 2d 388, 407-08, 424 N.W.2d 672 (1988) (noting that the court of appeals is an error-correcting court while the supreme court is a law-developing or law-declaring court); see also State v. Lee, 197 Wis. 2d 959, 970, 542 N.W.2d 143 (1996) ("The rules of appellate practice applicable to the court of appeals are not always applicable to this court, which functions primarily as a law-developing court.").

4